220 N.J. Super. 73 (1987)
531 A.2d 398
RICHARD MEYERS, PLAINTIFF,
v.
MICHAEL DONNATACCI, DONNA DONNATACCI, FOX POOL CORPORATION, RIN ROBYN SWIMMING POOLS, INC. AND NATIONAL SWIMMING POOL INSTITUTE, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Argued June 5, 1987.
Decided June 12, 1987.
*74 Raymond P. D'Uva, for plaintiff (Rodino, Forman & D'Uva, attorneys).
*75 Robert A. Auerbach, for defendants Michael and Donna Donnatacci.
Daniel M. Hurley, for defendant Fox Pool Corporation (Hurley & Vasios, attorneys).
Charles R. Melli, Jr., for defendant Rin Robyn Swimming Pools, Inc. (Melli & Doyne, attorneys).
Michael D. Loprete, for defendant National Spa and Pool Institute (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys).
BOYLE, J.S.C.
This is a motion for summary judgment brought by Defendant National Spa and Pool Institute ("NSPI") improperly pleaded as National Swimming Pool Institute. The underlying cause of action involves injuries sustained in a swimming pool accident. The novel question presented is whether a trade association owes a duty of care or assumes a duty not otherwise owed to any user of a product manufactured and/or designed by members of that association. The court is convinced that there is no duty owed or assumed and therefore grants summary judgment on behalf of NSPI.
On August 18, 1984, Plaintiff Richard Meyers ("Plaintiff") sustained severe personal injuries when he dove into the shallow end of an in-ground swimming pool at the home of Defendants Michael and Donna Donnatacci ("Donnatacci") where he was invited for a barbecue and swim party. Plaintiff has been rendered a quadriplegic as a result of the dive.
Plaintiff filed a Complaint against Donnatacci, the homeowners; Fox Pools, Inc., Fox Pool Corporation, Fox Industries and Fox Pools of York, Inc. ("Fox Pools"),[1] the manufacturer of the subject pool and vinyl liner; Rin Robyn Swimming Pools, *76 Inc. ("Rin Robyn"), the distributor and installer of the subject pool; and National Spa and Pool Institute ("NSPI"), the trade association wherein Rin Robyn and Fox Pools were members, alleging negligence against all defendants.
The remaining counts of the Complaint allege strict liability, breach of implied warranties and violation of the Consumer Product Safety Act against Fox Pools and Rin Robyn. Plaintiff seeks compensatory damages from all defendants.[2] Only Donnatacci and Rin Robyn asserted cross-claims against NSPI.
NSPI seeks an order granting summary judgment as to all claims and crossclaims asserted against it arguing that it owed no legally recognized duty to Plaintiff. Plaintiff has filed opposition to NSPI's motion.
It is uncontroverted that NSPI is a non-profit corporation organized in 1956. It is also uncontroverted that NSPI is not a manufacturer, fabricator, designer, builder, supplier, installer or wholesale or retail seller of swimming pools or pool equipment. NSPI is a voluntary trade association comprised of several hundred representatives from swimming pool manufacturers, maintenance firms, distributors, officials from the public health and safety sector, the American Red Cross, YM and YWCA groups, the International Association of Plumbing and Mechanical Officials and a number of coaches, physicians and teachers who are involved in swimming and aquatics.
On January 1, 1974, NSPI promulgated a revised set of standards entitled "Suggested Minimum Standards for Residential Swimming Pools" ("Standards"). To develop the standards, drafts were circulated to the NSPI membership and industry and public officials to solicit their comments. Scheduled meetings were arranged for those solicited to give them an opportunity to participate in developing the Standards. The cover page of the Standards states a compliance date of January *77 1, 1974. The Appendix to the Standards states, among other things, that the "safety of swimming pools extends beyond design and construction standards and includes many other elements among which are the provision of ancillary facilities and equipment, the restriction or prohibition of selected activities of swimmers and bathers, and various operational and maintenance procedures."
Prior to the issuance of the Standards, NSPI was aware that safety was a crucial element in swimming pool use. In late 1973, NSPI retained Arthur D. Little, Inc. ("ADL") as a consultant to perform research on residential diving boards, jumpboards and diving hoppers. The report was issued in June 1974 ("ADL 1"). A committee comprised of non-industry individuals and NSPI members was assembled by NSPI to oversee the research. When NSPI received the report, it was forwarded to the committee who determined that further research was needed on the subject and that same should be conducted under the auspices of the National Swimming Pool Foundation ("NSPF"), a subdivision of NSPI.
NSPF again selected ADL on February 14, 1978, to do supplemental research. The committee who reviewed this second project included, among others, members of the industry, individuals from the public health sector, the National Safety Council and the United States Navy.
This report ("ADL 2") was issued on May 15, 1980. NSPF decided to make this report available to the public for a fee. As of November, 1980, ADL 1 and ADL 2 were available to the members and the public. Concurrently, NSPI designed a program aimed at consumer awareness of safe pool use. Thereafter, pamphlets, brochures and other materials were published and made available to the general public free of charge.
On August 18, 1984, Plaintiff was injured in a swimming pool manufactured and installed in 1979. The swimming pool contained no warnings against diving into the shallow water and *78 had a mosaic patterned liner. The 1974 Standards were in effect at the time of the accident.
NSPI has a Constitution and By-Laws as well as a Code of Ethics. The membership dues vary from $50 for a non-voting aquatic professional to $10,585 for a manufacturer with an annual dollar volume of sales over $30,000,000.
The allegations against NSPI are grounded in negligence. Plaintiff does not assert that the information contained in the Standards is inaccurate, false or improper. Rather, the allegations are that NSPI was aware of the correlation between shallow water diving and spinal cord injuries as early as 1974 and despite this knowledge, failed to take action to prevent such harm. The allegation, therefore, is non-feasance rather than malfeasance. Alternatively, Plaintiff argues that NSPI assumed the duties of its members to acquire and disseminate pool safety information including the information it had acquired by virtue of its studies; that its members relied upon NSPI's standards thus foregoing their own research resulting in severe personal injuries sustained by Plaintiff.
NSPI moves for summary judgment on all claims and cross-claims on the basis of the lack of any duty owing to Plaintiff (R. 4:46-1) as well as the First Amendment right to free speech. The question presented on the motion is whether a trade association which performs research, conducts surveys and disseminates the results owes a duty to a consumer who is injured using a product manufactured and/or installed by one of its members. Alternatively, can the court impose a duty of care upon the trade association on the basis of Restatement, Torts 2d, § 324A (1965)?
A legal duty is "an obligation arising from a contract of the parties or the operation of the law." Black's Law Dictionary, 804 (5th ed. 1979).
Legal obligations, therefore, arise where the parties are bound by contract, West Caldwell v. Borough of Caldwell, 26 N.J. 9, 24 (1958) or where the obligations are "expressly or *79 impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations, or by judicial decisions." 57 Am.Jur.2d, Negligence, § 36 at 382.
There are no allegations, herein, that the parties are bound by contract or that Plaintiff is a third party beneficiary of a contractual relationship between NSPI and its members, Rin Robyn and Fox Pools. There are no allegations that NSPI violated any statutes, ordinances, rules or regulations. Plaintiff's theory of liability against NSPI is grounded in negligence. Negligence is the lack of due diligence or care. Actionable negligence, or negligence which is legally recognized and from which liability will arise "consists of various essential elements including the disregard or violation of a legal duty." Reilly v. 180 Club, Inc., 14 N.J. Super. 420, 423-424 (App.Div. 1951). This disregard or violation must then be the proximate result of injuries to the person to whom the duty is owed. Thus, "actionable negligence is sometimes said to be the failure to exercise the care which an ordinary person would employ under the existing and surrounding circumstances in the discharge of that duty." Id. at 423-424.
The prerequisite for imposition of liability upon a party is the existence of a legally recognized duty. This is determined by whether or not the risk or event to be guarded against is "reasonably within the range of apprehension of injury to another person." Hill v. Yaskin, 75 N.J. 139, 144 (1977).
The question before this court, therefore, is whether NSPI, a trade organization, owed Plaintiff a duty, the breach of which may subject the organization to damages for the resulting injuries to Plaintiff.
Two New York courts have refused to impose a duty of care upon trade associations under similar circumstances. See Beasock v. Dioguardi Enterprises, Inc., 130 Misc.2d 25, 494 N.Y.S.2d 974 (Sup.Ct. 1985); Howard v. Poseidon Pools, Inc., 133 Misc.2d 50, 506 N.Y.S.2d 523 (Sup.Ct. 1986).
*80 In Beasock, the New York court refused to hold the trade association, TRA, liable for the wrongful death of a man who was injured while inflating a tire mistakenly mounted on the wrong size rim. The trade association had published guidelines establishing the matching of tires to rims. The guidelines were the result of a consensus process among the group's members. The court held that since the trade association did not have the duty or authority to control the manufacturer, it could not be liable to the plaintiff. TRA did not commit the injury-producing act or affirmatively undertake a duty of care to the plaintiff.
In Howard, the patient was severely injured as a result of a dive into an above-the-ground swimming pool. NSPI was a named defendant therein and moved for summary judgment. The court interpreted the poorly worded complaint to allege that NSPI was liable based upon theories of negligent misrepresentation, strict product liability, breach of warranty and negligence. The latter theory of negligence is appropriate herein. NSPI had published consensus standards similar to those at issue here.
The court granted NSPI's motion stating:
"More importantly, NSPI did not have the duty or authority to control the manufacturers who did produce the product here in question, viz, the swimming pool. For the defendant NSPI to be responsible for the negligence of the manufacturer, it must appear that such defendant controlled the tort feasing manufacturer. In Pulka v. Edelman, 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019 [(1976)], Judge Cooke speaking for the Court of Appeals stated it succinctly, viz, "a duty to prevent such negligence should not be imposed on one who does not control the tort feasor (citing authorities)." 40 N.Y.2d 781 at 784, 390 N.Y.S.2d 393, 358 N.E.2d 1019. Expanding on this statement the court also noted that "although it is reasonable to require one person to be responsible for the negligent conduct of another in some instances, it is unreasonable to impose that duty where the realities of every day experience show us that, regardless of the measures taken, there is little expectation, that the one made responsible could prevent the negligent conduct." Citations omitted.
Howard, 506 N.Y.S.2d at 527.
No New Jersey case has squarely addressed the issue presented here.
*81 New Jersey has recognized and established various duties between parties. Such a determination is a question of law. Essex v. New Jersey Bell Telephone Co., 166 N.J. Super. 124, 127 (App.Div. 1979). Obligations arise based upon the relationship of the parties; Goldberg v. Housing Authority of Newark, 38 N.J. 578 (1962); knowledge of the danger presented which is premised upon the foreseeability of injury, McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571 (App.Div. 1960) or due to social policy, Kelly v. Gwinnell, 96 N.J. 538 (1984).
Citing the seminal case of Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99 (1928), the Supreme Court stated in Kelly, 96 N.J. at 544:
"In most cases the justice of imposing such a duty is so clear that the cause of action in negligence is assumed to exist simply on the basis of the actor's creation of an unreasonable risk of foreseeable harm resulting in injury. In fact, however, more is needed, `more' being the value judgment, based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care."
Plaintiff asserts that NSPI had a duty to use reasonable care in the development, accrual and dissemination of swimming pool information. Specifically, Plaintiff contends that NSPI held itself out to its members and the general public as an expert in the area of safety standards in swimming pools. Although Plaintiff admits that there was no special relationship between himself and the trade association, he asserts that it was foreseeable that he would be injured if NSPI failed to use reasonable care in its operations, and this imposed upon NSPI a legal duty owing to Plaintiff.
The court disagrees and holds that NSPI, as a trade association, owes no duty to the general public who may use products manufactured and/or installed by its members.
There was no special relationship existing between Plaintiff and NSPI. In fact, Plaintiff stated in answers to interrogatories that he had never received any information from NSPI. Furthermore, the crucial element of foreseeability is lacking. *82 As stated in Caputzal v. The Lindsay Co., 48 N.J. 69, 74 (1966), "Foreseeability is not solely a mere matter of logic, since anything is foreseeable, but frequently involves questions of policy as well."
NSPI, as a trade association, provides various services and programs to its members so as to achieve an ever expanding public interest in swimming and aquatics in general. Its services are directed to its membership in an attempt to provide a forum where the members can exchange ideas. In an effort to keep the membership apprised of each other's ideas and thoughts, a consensus was taken directed at compiling a set of minimum standards for construction and design of residential in-ground swimming pools.
The process of promulgating standards was voluntary and the results reflected consensus of those who chose to respond. Those whose comments and suggestions were solicited for the standards included not only the members of NSPI but industry and public officials and organizations including but not limited to the American Red Cross, Consumer Products Safety Commission, the National Environmental Health Association, the YM and YWCA. Suggestions and comments were submitted to NSPI's Technical Counsel who subdivided the task among various subcommittees. The final revision was presented to the Technical Council who adopted the standards.
The Standards were entitled "Suggested Minimum Standards for Residential Swimming Pools" (emphasis supplied). Although there was a compliance date of January 1, 1974 printed on the cover of the Standards, the court holds that NSPI had no power to enforce compliance. When members applied for admission to NSPI, they agreed to certain conditions: namely, adherence to the code of Ethics, the Constitution and By-Laws of the Chapter and Institute and the Chapter rules and regulations concerning the use of the Institute logo. A careful reading of each of these provisions indicates that NSPI had absolutely no power to force a member to comply *83 with its promulgated standards. Members agreed "to design or build in a manner compatible in every respect with public health and safety, and to comply with all applicable laws, ordinances or regulations" (Code of Ethics). Use of the logo was dependent upon the member's conformance with the policies and conditions established by the National Board. Members were also obliged "to contribute to the health, safety and welfare of the public in the installation, maintenance and operation of swimming pools, spas and hot tubs." (By-Laws). Neither admission nor continued membership was premised upon compliance with promulgated consensus standards. It would be ludicrous to try to force members to comply with Standards which were the result of a consensus. Such action would, among other things, violate NSPI's Code of Ethics which seeks to encourage free enterprise. At most, a member's sanction was expulsion from his Chapter and the Institute. There was no further penalty. This does not constitute the control necessary to establish liability for the alleged culpable conduct.
Likewise, as covered in Beasock, control by the trade association was lacking. The association neither mandated nor monitored the use of the standards by any manufacturer. The information published was advisory and use thereof was within the discretion and control of the individual user. "Where one does not commit the injury producing act directly, responsibility for its consequences requires, at the very least, a relationship with the tort feasor sufficient to exercise control over the culpable conduct." Beasock, 494 N.Y.S.2d at 979.
NSPI did not create or establish dimensional designs or construction standards for swimming pools. Any compliance date established for the Standards was merely an effort to have conformity among those who chose to adopt the Standards. There is no evidence presented to show that NSPI controlled the operations of its members or that if NSPI ceased its operations or discontinued providing the consensus standards that its membership would stop production.
*84 Furthermore, the subsequent research which Arthur D. Little, Inc. ("ADL") conducted for NSPI does not strengthen Plaintiff's position. The first report ("ADL-1") was rendered in or about June 1974 and dealt with the relationship between residential diving boards, jumpboards and hoppers. It was disseminated among committee members who decided not to make the report available since in their opinion it raised more questions than it answered. The court finds that there is nothing in the report which indicates that NSPI had information available to it which it suppressed. Likewise, there was nothing therein which made Plaintiff's injuries foreseeable. The court finds that the report was extremely technical and inconclusive. The fact that the report may have contained information that there is a relationship between an individual's physical build, his velocity when entering the water and the drag time of the body underwater does not translate, as Plaintiff would have the court believe, into foreseeability that Plaintiff would be injured if the information was not made public. This is an unreasonable proposition.
The court is unpersuaded, too, that the subsequent report rendered by ADL ("ADL-2") at the request of The National Swimming Pool Foundation ("NSPF"),[3] a subdivision of NSPI, contains any information that would make Plaintiff's injury foreseeable. In fact, the report suggests that posting signs would be of questionable value and suggests a program designed at developing a public awareness of the risk of shallow diving. ADL-2 specifically recommended that general prohibitions against diving into shallow water not be adopted. (Emphasis supplied). Both reports were, thereafter, made available to the public as well as members of NSPI in November 1980.
Plaintiff offers the minutes of various meetings at which the committee members discussed, among other things, considering depth markings and visual identification of the deep portion of *85 the swimming pools in an effort to help decrease the number of pool accidents. These meetings were held in February and October 1974. These facts, however, fail to support Plaintiff's argument. First, the February 1974 meeting was prior to the presentation of ADL-1. The October 1974 committee report merely confirmed that these areas should be further researched. There is no indication in any of these facts that NSPI could foresee that Plaintiff would be injured as he was. Foreseeability is lacking here. Conduct is tested by whether a reasonably prudent person would recognize and foresee an unreasonable risk of harm to others. McCabe v. N.J. Turnpike Authority, 35 N.J. 26 (1961). Plaintiff's position is unreasonable and amounts to a misapplication of the legal principles involved. Foreseeability must not be viewed in a vacuum. It is a legal concept grounded in the realities of life experiences. Foreseeability, alone, without more cannot determine the existence of a duty. As stated in Kelly v. Gwinnell, supra, 96 N.J. 538, at 544, "... more is needed, `more' being the value judgment based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care." Using this, then, as a guideline, the court holds that NSPI did not owe Plaintiff a duty of care.
NSPI is a non-profit trade association. Such organizations serve many laudable purposes in our society. They contribute to the specific industry by way of sponsoring educational activities, and assisting in marketing, maintaining governmental relations, researching, establishing public relations, standardization and specification within the industry, gathering statistical data and responding to consumer needs and interests. Furthermore, trade associations often serve to assist the government in areas that it does not regulate. Webster, G., The Law of Associations, Matthew Bender (1986 ed.) Chapter 1.
As explained in Goldberg v. Housing Authority of Newark, supra, 38 N.J. at 583 "whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public *86 interest in the proposed solution." With this in mind and the facts presented herein, the court will not impose upon NSPI a legal duty. It would amount to raising NSPI to the status of a rule-making body which the facts clearly show is unwarranted and legally unsupportable.
Plaintiff's second theory in opposition to NSPI's motion is grounded in the Restatement, Torts, § 324A which provides:
"One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."
Research on this issue reveals that there is no case in New Jersey which has imposed liability upon a trade association using § 324A.
According to Plaintiff, NSPI, through a structured system of committees and retention of independent contractors undertook to develop and promulgate design, construction and safety procedures, undertook to warn the public and the industry of potential hazards of improper pool use, collected information as to injuries caused by the designs of swimming pool products, formulated safety measures to be undertaken to avoid such injuries, and provided publications for the education and information of the general public. While charging members a fee, it has thrust itself into the purvue of § 324A. By researching swimming pool design and diving accidents and injuries, and by issuing standards and providing information to its members and the general public, NSPI undertook to perform a duty owed by the manufacturer and installer to the plaintiff and induced the manufacturer and installer to rely upon its research and recommendations as providing adequate safety information.
*87 Plaintiff asserts that NSPI was more than a forum for its members. By virtue of its assumed duties and the fact that it had information available to it that spinal cord injuries were resulting from head-first dives into shallow water, NSPI had a duty to exercise reasonable care in dealing with this information. Plaintiff contends that NSPI had evidence that mosaic patterned liners inhibit accurate perception of the water's depth. Based upon all of this, Plaintiff asserts that NSPI failed to exercise reasonable care which resulted in an increased risk of harm to Plaintiff.
Plaintiff urges that NSPI's membership dues were tantamount to payment for research. In Blessing v. United States, 447 F. Supp. 1160 (E.D.Pa. 1978), Judge Becker stated:
"The foundational requirement of the Good Samaritan Rule is that in order for liability to impose upon the actor, he must specifically have undertaken to perform the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully...." (Emphasis supplied).
Id. at 1188-1189.
Plaintiff would have the court believe that the membership dues served as a fee for research and preparation of the industry standards. This, however, is not how the court views this. All organizations have membership fees. There are operational expenses which are unavoidable. As stated in NSPI's Constitution and By-Laws:
"... the purpose of this association is to promote, advance and advocate the common interests of its members in aquatic activities."
This is not a money-making operation. The fees do not transform NSPI into a research organization which impliedly contracted to perform its members' duties to the public. On the contrary, NSPI maintained a forum for its members, a situation where they could have group solidarity. It did not undertake the duty to warn consumers or its membership of the danger of shallow water diving or the dangers presented by certain pool liners. NSPI never assumed any of its members' duties and the court will not construe any of its actions as such an assumption. Although NSPI rendered services to its members *88 by providing a forum, NSPI did not assume the duty to warn consumers of the danger of shallow diving which it recognized as necessary for the protection of a third party.
The lack of a specific undertaking is evident, also, in the fact that the Standards were the result of a consensus survey as heretofore discussed. A consensus is defined as group solidarity in sentiment and belief. Websters New Collegiate Dictionary 238 (1st ed. 1979). It is not a situation where a contract existed between NSPI and its members which delineated the parties' duties. See Abel Holding Co., Inc. v. American District Telegraph Co., 147 N.J. Super. 263 (App.Div. 1977).
§ 324A has been used in various situations. In Barbarisi v. Caruso, 47 N.J. Super. 125 (App.Div. 1957), the Appellate Division used § 324A to impose a duty of care when the defendant-grandmother agreed to babysit her grandson. The grandmother had gone upstairs to answer the door and left the child in the cellar unattended. The child was subsequently injured. The court held that the grandmother specifically assumed to act as custodian and caretaker of the child, and she failed to exercute that undertaking with due care and was therefore liable.
NSPI had no authority to mandate compliance nor did it attempt to force its members to comply. It acted merely as the secretariat for its members; a forum where those who chose to make suggestions could do so. There were no penalties for failing to respond to the survey. NSPI is merely an association of various trade members who use the national membership to advance public interest in aquatics and thereby gain respect for the industry. Plaintiff fails to establish liability under § 324A(b).
Furthermore, any activities of NSPI did not increase the risk of harm to Plaintiff within the meaning of § 324A(a). The only increased risk Plaintiff can assert is an argument that when a level of risk such as a pool without warning signs or a deceptive liner exists, it increases the risk of injury to Plaintiff over time. In reality, the risk to Plaintiff was an attempt to execute a *89 shallow dive. There was nothing NSPI did or failed to do which increased the risk to Plaintiff. There is no evidence that NSPI recommended any changes, suppressed any information, or failed to recommend any changes which in any way increased the risk to Plaintiff. The hazard of shallow-water diving existed independently of any acts on the part of NSPI. There is no evidence that the risk increased. Ricci v. Quality Bakers of America Co-op, Inc., 556 F. Supp. 716 (D.Del. 1983). At most, NSPI's "alleged conduct merely `permitted the continuation of an existing risk,' an inadequate basis upon which to impose liability under section 324(a)." Citations omitted. Id. at 720. Plaintiff fails to establish liability under § 324A(a).
Any assertion that the manufacturer and installer herein relied upon NSPI to promulgate safety standards is without merit. Although the court recognizes that the standards were stated to be minimum design and construction standards, safety was part of its overview. This, however, is not fatal to NSPI's argument. All members, including the manufacturer and installer, were aware of the process undertaken to arrive at these Standards. Any assertion that these members relied upon the results is incongruous. The members knew the result was the voluntary consensus of fellow members. Furthermore, the Appendix states, among other things:
"One of the basic considerations upon which these design and construction standards are founded is safety. However, safety of swimming pools extends beyond design and construction standards and includes many other elements among which are the provision of ancillary facilities and equipment, the restriction or prohibition of selected activities and bathers, and various operational and maintenance procedures. The National Swimming Pool Institute suggests that a builder of a swimming pool advise the initial owner of a residential-type swimming pool of some of the more important features related to safety concerning the ownership, operation and maintenance of the pool."
Thus, any argument that these members relied may serve to their disadvantage in the future since such reliance was totally unjustified. There was nothing that NSPI did or failed to do which induced its members to forego their responsibilities to the consumer. See O'Brien v. Muskin, 94 N.J. 169 (1983). *90 Therefore, plaintiff has failed to establish NSPI's liability under § 324A(c).
Viewing the facts most favorably to Plaintiff, he has failed to establish NSPI's liability under § 324A. Having failed to find any genuine issue of material fact and having held that NSPI did not owe Plaintiff a duty of care, under any established common law duty or under § 324A, NSPI is entitled to summary judgment. R. 4:46.
The final argument by NSPI that First Amendment policy considerations prevent the imposition of liability on NSPI will not be addressed since same is moot.
Due to the court's holding herein, the crossclaims asserted by the homeowner and installer of the swimming pool will be dismissed as there then is no basis for contribution. N.J.S.A. 2A:53A-1 et. seq.
NOTES
[1] After motion by Fox Pools and pursuant to R. 4:30 only Fox Pools Corporation remains as the proper party defendant.
[2] Claims for punitive damages were alleged against all defendants except NSPI but same were dismissed by Court order dated April 7, 1987.
[3] NSPF is not a defendant.