Barbara Briant King, as administratrix of the estate of Kenneth A. Halpern, deceased ("Ms. King's intestate"), appeals from a summary judgment in favor of National Spa and Pool Institute, Inc. ("the trade association"), made final pursuant to Rule 54(b), A.R.Civ.P. The only question presented to us is a question of first impression in this State: What duty, if any, does a manufacturer's trade association owe to a consumer to prevent injuries caused by the product of a manufacturer who is a member of that trade association?
In the fall of 1987, Ms. King's intestate purchased a house and a lot in Mobile, Alabama. There was an in-ground, vinyl-lined swimming pool that had been constructed in 1981 by Southern Leisure Pool and Supply Corporation ("Southern Leisure"), a defendant not involved in this appeal. The evidence before the trial court showed that the swimming pool met the trade association's "Suggested Minimum Standards for Residential Swimming Pools" ("standards") and was of the size, shape, and dimensions that the trade association prescribed for allowing the type of diving board that had been installed with the pool. In May, 1988, Ms. King's intestate dove into the pool from the diving board. He did not slip, trip, or otherwise go into the pool unintentionally. It can reasonably be inferred that Ms. King's intestate hit his head on the bottom or side of the pool and sustained a broken neck that caused permanent quadriplegia. Approximately eight and one-half months later, he died of pneumonia secondary to quadriplegia.
In opposition to the trade association's motion for summary judgment, Ms. King filed an affidavit of Dr. George E. Lawniazak, an expert in diving injuries and swimming pools. According to Dr. Lawniazak, even though the subject swimming pool met the trade association's minimum standards for allowing the type of diving board that had been installed for diving into the pool, the pool was defective and unreasonably dangerous for diving from the diving board. Also according to Dr. Lawniazak, the pool had inadequate dimensions, the water volume in the pool was inadequate for safe diving from the diving board, and the configuration of the pool was such that it was not safe for diving from the diving board.
Ms. King's theory of liability against the trade association is that the standards that allowed the placement of a diving board in this particular size pool created an unreasonable risk of harm.
Did the trade association owe Ms. King's intestate, the owner and a user of a pool manufactured and installed in accordance with the standards promulgated by the trade association, a duty? If not, Ms. King's action for negligence cannot lie, and the judgment must be affirmed. "If the defendant owed a duty, but did not owe it to the plaintiff, the action [for negligence] *Page 614 
will not lie." 1 Shearman Redfield, On the Law of Negligence
§ 8 at 13-14 (6th ed. 1913). See, also, Palsgraf v. Long IslandR.R., 248 N.Y. 339, 162 N.E. 99 (1928).
In Pugh v. Butler Telephone Co., 512 So.2d 1317, 1319 (Ala. 1987), this Court held:
 "Fundamental to the maintenance of a negligence action is the existence of a legal duty of care owed by the defendant to the plaintiff. Plaintiffs place great emphasis upon the contractual undertaking of Fail in its contract with Butler. While a party's negligent performance of a contract may subject that party to liability in tort for physical harm to others, see Morgan v. South Central Bell Tel. Co., 466 So.2d 107, 114 (Ala. 1985), the scope of that duty, i.e., the persons to whom that duty runs, must be ascertained."
(Emphasis supplied.)
A legal duty is "an obligation arising from a contract of the parties or the operation of the law." Black's Law Dictionary
804 (5th ed. 1979).
A legal duty to exercise care, therefore, arises where the parties are bound by contract, Pugh v. Butler Telephone Co., supra, or where the obligations are "expressly or impliedly imposed by statute, municipal ordinance, or by administrative rules or regulations, or by judicial decisions." 57 Am.Jur.2d,Negligence § 36 at 382 (1988).
There are no allegations that a contract existed between the trade association and Ms. King's intestate or that Ms. King's intestate was a third-party beneficiary of a contractual relationship between Southern Leisure and the trade association or that the trade association violated any statutes, ordinances, or rules or regulations enacted or promulgated to protect Ms. King's intestate.
There is no duty imposed by judicial decision on trade associations to promulgate industry standards.
Therefore, the trade association had no statutorily or judicially imposed duty to formulate standards; however, it did so. It is well settled under Alabama law that one who undertakes to perform a duty he is not otherwise required to perform is thereafter charged with the duty of acting with due care. Rudolph v. First Southern Federal Savings Loan Ass'n,414 So.2d 64 (Ala. 1982). This is in accord with Justice Cardozo's classic case, Glanzer v. Shepard, 233 N.Y. 236, 239,135 N.E. 275, 276, 23 A.L.R. 1425 (1922):
 "[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."
The Restatement (Second) of Torts § 324A (1966), states:
 "One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 " (a) his failure to exercise reasonable care increases the risk of such harm, or
 "(b) he undertakes to perform a duty owed by the other to the third person, or
 "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."
Ms. King's intestate did not know of the trade association's standards, so clearly he did not rely on them when he dove into his pool. However, if the manufacturer or installer of the pool relied on the standards promulgated by the trade association in constructing or installing the pool, the trade association could be liable under the principles of § 324A(b) and/or (c), which state the law of Alabama.
The "Foreword" to the standards read as follows:
 "This document has been prepared by members of the Standards and Codes Committee of the National Swimming Pool Institute with the much appreciated contributions of the American Public Health Association, National Safety Council, American Red Cross and the National Sanitation Foundation. It is a minimum standard for design and construction *Page 615 
practices for the swimming pool industry.
 "Variations in equipment and materials are permissible so long as operation and performance equivalent to the minimum standard is achieved. Where local building codes are more comprehensive or specific relative to construction, design, or safety, the local regulations should be followed.
 "The National Swimming Pool Institute will continue to study the needs of the consumer, and developments within the industry, and will up-date the standards at least every three years. Comments and recommendations are always welcome."
(Emphasis supplied.)
This was followed by the names of the members of the Standards and Codes Committee and the names and addresses of the companies (e.g., Gary Aquatech Pools, Inc.), agencies (e.g., National Safety Council), or institutions (e.g., Yale University) with which the committee members were affiliated. After certain phrases or words were defined in the standards, there were 15 pages of "minimum standards" relating to (1) structural design, (2) dimensional design, (3) materials of construction, (4) deck equipment (steps, ladders, stairs, diving boards, and platforms), (5) safety features, (6) electrical requirements, (7) water supply, (8) inlets and outlets, (9) recirculation systems (piping, fitting, filters, skimmers), (10) skimmers, (11) filters, (12) pumps and strainers, (13) valves, (14) chemical feeding equipment, and (15) waste water disposal. The section on dimensional design was the most detailed, and it divided pools into five types. Type one included any residential pool where the installation of diving equipment was prohibited. The other four types included residential pools that were suitable for the installation of diving equipment of one of four classifications. The last subsection of the dimensional design standard read as follows:
 "Pool Labeling — A label, conspicuously placed, shall be permanently affixed to the pool or deck. Said label shall contain the following information (Note 1):
 "This is a Type (Note 2) Pool as defined in the 19 (Note 3) NSPI 'SUGGESTED MINIMUM STANDARDS FOR RESIDENTIAL SWIMMING POOLS.' Diving equipment, if installed, must meet STANDARDS for this Type Pool and must be located and installed in accordance with the STANDARDS.
 "The letters of the label shall be legible and not less than one-eighth inch (1/8") in height.
 "The label shall be placed so that it is not hazardous to bathers.
"Notes:
 "1. The NSPI Pool Registry Program may be used in lieu of the above noted label.
 "2. Indicates the type of pool classification, i.e. Pool Type I, Pool Type II, etc.
 "3. Indicates the date of the STANDARD to which the swimming pool conforms, i.e. the swimming pool was constructed to 1974 NSPI 'SUGGESTED MINIMUM STANDARDS FOR RESIDENTIAL SWIMMING POOLS.' "
The Appendix to the Standards specifically states that "one ofthe basic considerations upon which these design andconstruction standards are founded is safety."
On the cover sheet of the standards, the following appears: "COMPLIANCE BY: January 1, 1974."
In Bush v. Alabama Power Co., 457 So.2d 350, 353 (Ala. 1984), this Court held: "The ultimate test of a duty to use [due] care is found in the foreseeability that harm may result if care is not exercised." In Palsgraf, supra, Justice Cardozo wrote: *Page 616 
"[T]he eye of vigilance perceives the risk of damage. . . . The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." 248 N.Y. at 344,162 N.E. at 100.
In the instant case, the standards refer to "the needs of the consumer," e.g., Ms. King's intestate. In the instant case, a label showing that diving equipment must meet the standards was required to be permanently affixed to the pool or deck. But for whose benefit? For the benefit of the consumer, e.g., Ms. King's intestate. In the instant case, the appendix to the standards states that "safety" is one of the basic considerations upon which the design and construction standards are founded. Whose safety? That of the consumer, e.g., Ms. King's intestate.
Based on the foregoing, we hold that the trade association was under a legal duty to exercise due care in promulgating the standards in question. The trade association's voluntary undertaking to promulgate minimum safety design standards for safe diving from diving boards installed in residential swimming pools (such standards being based on studies of the "needs of the consumer" and founded on a consideration of "safety" involved in the design and construction of such swimming pools) and to disseminate those standards to its members for the purpose of influencing their design and construction practices, made it foreseeable that harm might result to the consumer if it did not exercise due care.
In Alabama, evidence that a defendant manufacturer complied with or failed to comply with industry standards, such as the standards promulgated by the trade association in this case, is admissible as evidence of due care or the lack of due care.Elmore County Commission v. Ragona, 540 So.2d 720 (Ala. 1989);Dunn v. Wixom Bros., 493 So.2d 1356 (Ala. 1986). Such evidence is not conclusive on this issue, but is evidence of due care or lack of due care, to be evaluated by the trier of fact with other evidence on this issue.
We have carefully reviewed the cases from other jurisdictions[1] cited by the trade association in support of its position. We note that some of those cases involve varying fact situations as well as varying theories on which the negligence claims are grounded. However, the underlying rule of law, the rationale on which those cases were decided, is the same and is best stated in Meyers v. Donnatacci, 220 N.J. Super. 73,531 A.2d 398 (1987) (a case of first impression in New Jersey), which did not involve allegations of negligence on the part of the trade association in promulgating standards for the design and construction of pools, but, instead, involved the trade association's non-feasance in failing to take action to prevent users of pools from diving from the side of a pool into shallow water:
 " 'NSPI did not have the duty or authority to control the manufacturers who did produce the product here in question, viz., the swimming pool. For the defendant NSPI to be responsible for the negligence of the manufacturer, it must appear that such defendant controlled the tortfeasing manufacturer. . . . "[A] duty to prevent such negligence should not be imposed on one who does not control the tortfeasor (citing authorities). . . ." Expanding on this statement the court also noted that "although it is reasonable to require one person to be responsible for the negligent conduct of another in some instances, it is unreasonable to impose that duty where the realities of everyday experience show us that, regardless of the measures taken, there is little expectation, that the one made responsible could prevent *Page 617 
the negligent conduct." ' " Citations omitted.
 "Howard [v. Poseidon Pools, Inc., 133 Misc.2d 50, 506 N.Y.S.2d 523 (Sup.Ct. 1986)] 506 N.Y.S.2d at 527.
 "[A determination of the] various duties between parties . . . is a question of law. Obligations arise based upon the relationship of the parties; knowledge of the danger presented which is premised upon the foreseeability of injury, or due to social policy [sic]. [Citations omitted.]
 "Plaintiff asserts that NSPI had a duty to use reasonable care in the development, accrual and dissemination of swimming pool information. Specifically, Plaintiff contends that NSPI held itself out to its members and the general public as an expert in the area of safety standards in swimming pools. Although Plaintiff admits that there was no special relationship between himself and the trade association, he asserts that it was foreseeable that he would be injured if NSPI failed to use reasonable care in its operations, and this imposed upon NSPI a legal duty owing to Plaintiff.
 "The court disagrees and holds that NSPI, as a trade association, owes no duty to the general public who may use products manufactured and/or installed by its members.
 "There was no special relationship existing between Plaintiff and NSPI. . . .
 "There is no indication in any of these facts that NSPI could foresee that Plaintiff would be injured as he was. Foreseeability is lacking here. Conduct is tested by whether a reasonably prudent person would recognize and foresee an unreasonable risk of harm to others. [Citation omitted.] Plaintiff's position is unreasonable and amounts to a misapplication of the legal principles involved. Foreseeability must not be viewed in a vacuum. It is a legal concept grounded in the realities of life experiences. Foreseeability, alone, without more cannot determine the existence of a duty. As stated in Kelly v. Gwinnell, [96 N.J. 538, 544, 476 A.2d 1219, 1222 (1984)], '. . . more is needed, "more" being the value judgment based on an analysis of public policy, that the actor owed the injured party a duty of reasonable care.' Using this, then, as a guideline, the court holds that NSPI did not owe Plaintiff a duty of care.
". . . .
 " '. . . [W]hether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.' With this in mind and the facts presented herein, the court will not impose upon NSPI a legal duty. It would amount to raising NSPI to the status of a rule-making body which the facts clearly show is unwarranted and legally unsupportable.
 "Plaintiff's second theory in opposition to NSPI's motion is grounded in the Restatement, Torts, § 324A. . . .
". . . .
 "According to Plaintiff, NSPI, through a structured system of committees and retention of independent contractors undertook to develop and promulgate design, construction and safety procedures, undertook to warn the public and the industry of potential hazards of improper pool use, collected information as to injuries caused by the designs of swimming pool products, formulated safety measures to be undertaken to avoid such injuries, and provided publications for the education and information of the general public. . . .
 "Plaintiff asserts that NSPI was more than a forum for its members. By virtue of its assumed duties and the fact that it had information available to it that spinal cord injuries were resulting from head first dives into shallow water, NSPI had a duty to exercise reasonable care in dealing with this information. . . . Plaintiff asserts that NSPI failed to exercise reasonable care which resulted in an increased risk of harm to Plaintiff.
". . . .
 "On the contrary, NSPI maintained a forum for its members, a situation where they could have group solidarity. It did not undertake the duty to warn consumers *Page 618 
or its membership of the danger of shallow water diving or the dangers presented by certain pool liners. NSPI never assumed any of its members' duties and the court will not construe any of its actions as such an assumption. Although NSPI rendered services to its members by providing a forum, NSPI did not assume the duty to warn consumers of the danger of shallow diving which it recognized as necessary for the protection of a third party.
 "The lack of a specific undertaking is evident, also, in the fact that the Standards were the result of a consensus survey. . . . It is not a situation where a contract existed between NSPI and its members which delineated the parties' duties. [Citation omitted.]
". . . .
 "NSPI had no authority to mandate compliance nor did it attempt to force its members to comply. It acted merely as the secretariat for its members; a forum where those who chose to make suggestions could do so. There were no penalties for failing to respond to the survey. NSPI is merely an association of various trade members who use the national membership to advance public interest in aquatics and thereby gain respect for the industry. Plaintiff fails to establish liability under § 324A(b).
". . . .
 "Any assertion that the manufacturer and installer herein relied upon NSPI to promulgate safety standards is without merit. Although the court recognizes that the standards were stated to be minimum design and construction standards, safety was part of its overview. This, however, is not fatal to NSPI's argument. All members, including the manufacturer and installer, were aware of the process undertaken to arrive at these Standards. Any assertion that these members relied upon the results is incongruous. The members knew the result was the voluntary consensus of fellow members. . . .
 "There was nothing that NSPI did or failed to do which induced its members to forgo their responsibilities to the consumer."
Meyers v. Donnatacci, 220 N.J. Super. at 81-89,531 A.2d at 402-07.
As previously noted, Meyers involved the failure on the part of a trade association to take any action to prevent users of pools from diving from the side of a pool into shallow water. It did not involve allegations of negligence on the part of a trade association in promulgating standards for the design and construction of pools, as does the case at issue. Therefore, although we might have reached the same result under the facts in Meyers as the New Jersey Superior Court did, we find that court's rationale not to be in accordance with general principles of Alabama law and, thus, unpersuasive. In our view, the fact that the standards promulgated by a trade association are based on a voluntary consensus of its members, or the fact that a trade association does not specifically control the actions of its members, does not, as a matter of law, absolve the trade association of a duty to exercise reasonable care when it undertakes to promulgate standards for the "needs of the consumer."
For the foregoing reasons, we reverse the judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Beasock v. Dioguardi Enterprises, Inc., 130 Misc.2d 25,494 N.Y.S.2d 974 (Sup.Ct. 1985); Friedman v. F.E. Myers Co.,706 F. Supp. 376 (E.D.Pa. 1989); Goldberg v. Housing Authority ofNewark, 38 N.J. 578, 186 A.2d 291 (1962); Gunsalus v. CelotexCorp., 674 F. Supp. 1149 (E.D.Pa. 1987); Howard v. PoseidonPools, Inc., 133 Misc.2d 50, 506 N.Y.S.2d 523 (Sup.Ct. 1986), aff'd, 134 A.D.2d 926, 522 N.Y.S.2d 388 (1987); Klein v.Council of Chemical Associations, 587 F. Supp. 213 (E.D.Pa. 1984); Meyers v. Donnatacci, 220 N.J. Super. 73, 531 A.2d 398
(1987).