PER CURIAM.
Jeannie West Crabtree and Edward Wayne Crabtree appeal from a summary judgment of the Mobile Circuit Court in favor of BASF Building Systems, LLC (“BASF”), entered on the stated ground that the Crabtrees’ claims of negligence and wantonness against BASF were barred by the statute of limitations. We reverse and remand.
On February 11, 2004, Edward Crabtree slipped and fell in the parking deck of Mobile Infirmary and suffered injuries as a result; the Crabtrees commenced this action on October 29, 2004, naming Mobile Infirmary and fictitiously named parties “B,” “C,” “D,” “E,” and “F” as defendants in the lawsuit. The action alleged negligence and wantonness and sought compensatory and punitive damages for Edward Crabtree’s injuries and Jeannie Crabtree’s loss of consortium. On November 10, 2004, the Crabtrees served Mobile Infirmary with a first set of interrogatories and production requests. On January 12, 2005, the Crabtrees’ attorney wrote Mobile Infirmary asking it to respond to those discovery requests. Mobile Infirmary responded on January 18, 2005, at which time it stated that it did not possess sufficient knowledge to answer pertinent discovery requests. As a result, the Crab-trees’ attorney wrote Mobile Infirmary again on January 25, 2005, requesting a *789 supplemental response to its response submitted on January 18, 2005. After Mobile Infirmary failed to respond to the Crab-trees’ request, the Crabtrees filed a motion to compel discovery. In response, Mobile Infirmary informed the trial court that it lacked the requisite knowledge to answer the Crabtrees’ discovery requests because it did not know the circumstances of Mr. Crabtree’s fall; at that time, the Crabtrees agreed to discontinue their efforts to obtain discovery until Mobile Infirmary had deposed Mr. Crabtree.
On November 10, 2005, the Crabtrees served a second set of interrogatories and requests for production on Mobile Infirmary; in that second set of discovery requests, the Crabtrees sought to ascertain the name of the material applied to the parking deck, the name of the manufacturer of that material, and the date that that material had been applied to the deck, and, in addition, they sought production of all documents in Mobile Infirmary’s possession that referred to, were related to, or were in any way associated with the application of that material to the parking deck. On November 29, 2005, Mobile Infirmary supplemented its response to the Crab-trees’ first set of discovery requests; that response was the first time Mobile Infirmary informed the Crabtrees that polyurethane coating had been applied to the parking deck, but that response failed to identify the product used, the manufacturer of that product, or the person or persons who had applied the product to the parking deck.
On December 9, 2005, and again on January 20, 2006, the Crabtrees’ attorney wrote a letter to Mobile Infirmary seeking its responses to the second set of discovery requests; the Crabtrees thereafter filed a motion to compel Mobile Infirmary to answer that second set of discovery requests, which was granted on February 3, 2006 (compelling Mobile Infirmary to answer the discovery no later than February 24, 2006).
Also on February 3, 2006, the Crabtrees filed their first amended complaint, asserting claims against fictitiously named defendants “G,” “H,” and “I,” for having, they alleged, negligently and wantonly installed an “unknown material” that had purportedly caused the parking deck to be slippery. On February 7, 2006, Mobile Infirmary’s counsel informed the Crabtrees’ counsel that J.F. Pate and Associates Contractors, Inc. (“J.F. Pate”), and CHP Industrial and Marine, Inc. (“CHP”), had been hired by Mobile Infirmary as the contractor and subcontractor, respectively, charged with installing polyurethane material to the parking deck; Mobile Infirmary’s counsel also informed the Crabtrees that the polyurethane material that had been applied had been manufactured by Degussa Corporation (“Degussa”). ■ On February 9, 2006, the Crabtrees filed their second amended complaint, adding J.F. Pate and CHP as defendants, and it submitted discovery requests to those parties.
As of February 11, 2006, two years had elapsed from the date of Edward Crab-tree’s fall. Three days later, on February 14, 2006, Mobile Infirmary submitted its responses to the Crabtrees’ second set of discovery requests; the only reference to Degussa in the responses was to indicate that Mobile Infirmary believed that the polyurethane material that had been applied to the parking deck had been manufactured by Degussa. On March 2, 2006, the Crabtrees notified the court of their intention to subpoena Degussa for the purpose of obtaining any and all documents related to any work performed on Mobile Infirmary’s parking deck. CHP was issued a summons, the Crabtrees’ second amended complaint, and a set of discovery requests (the first discovery requests to be *790 served upon CHP) on March 17, 2006; on April 3, 2006, after having not received CHP’s responses to the Crabtrees’ discovery requests, the Crabtrees’ counsel sought responses to those requests by letter. On April 10, 2006, Degussa was served with a nonparty subpoena requesting any and all documents related to Mobile Infirmary or work performed on its parking deck, in response to which Degus-sa requested an additional 30 to 45 days to respond to the subpoena.
On April 26, 2006, after still not having received CHP’s responses to their discovery requests, the Crabtrees sent another copy of the discovery requests to CHP’s counsel. On May 15, 2006, Degussa responded to the Crabtrees’ subpoena; however, the documents that Degussa submitted as being responsive to the Crabtrees’ subpoena were not pertinent to the parking deck where Mr. Crabtree had fallen. On May 19, 2006, the Crabtrees wrote another letter to CHP’s counsel urging CHP to send its responses to the discovery requests.
On June 9, 2006, CHP submitted its responses to the Crabtrees’ discovery requests directed to CHP, which, for the first time, revealed documents indicating that Degussa had been involved in the application of the polyurethane material on the parking deck. On June 14, 2006, the Crabtrees filed their third amended complaint substituting Degussa for fictitiously named defendant “G.” On August 23, 2006, BASF entered the litigation for the first time by filing a motion for additional time to answer the Crabtrees’ third amended complaint; in that motion, BASF stated that it had been “improperly named in the complaint as Degussa Corporation.” On September 12, 2006, BASF filed an answer to the third amended complaint denying the Crabtrees’ claims, denying adequate knowledge to respond to the claims, and asserting that the Crabtrees had failed to state any grounds for relief; no limitations defense was affirmatively pleaded in that answer. On January 31, 2007, Degus-sa filed a motion to dismiss the claims against it, stating that Degussa’s name had been changed to BASF and that, because Degussa had been improperly added as a defendant, BASF had answered the third amended complaint; as an additional basis for seeking dismissal of the claims against Degussa, Degussa averred that BASF had appeared in the litigation already. The Crabtrees then filed their fourth amended complaint on March 7, 2007, adding BASF as a defendant in the action.
On April 11, 2008, BASF filed a motion for a summary judgment alleging that the two-year limitations period claimed by BASF to be applicable to the Crabtrees’ claims had expired before it had been added as a party and that the Crabtrees had failed to act in a sufficiently diligent manner in adding BASF as a party. On April 18, 2008, BASF moved to amend its answer to the Crabtrees’ third amended complaint; it added two affirmative defenses (claiming a supervening or intervening cause had caused Mr. Crabtree’s fall and that Mr. Crabtree’s injuries had been caused by individuals that BASF had neither the ability nor the right to control). On April 24, 2008, BASF filed a second motion for a summary judgment, asserting that the Crabtrees’ claims had no merit and that there was no question of fact to be resolved. On December 3, 2008, a summary judgment was entered in BASF’s favor on the ground that the period set forth in the applicable statute of limitations had expired. The Crabtrees’ appeal from that order, as to which order the trial court directed the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. The appeal was transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6).
*791 On appeal, the Crabtrees argue that the trial court erred in entering a summary judgment in favor of BASF on the ground that the Crabtrees’ negligence and wantonness claims against BASF were barred by Ala.Code 1975, § 6-2-38(0, the purportedly applicable statute of limitations (providing for a two-year period within which to bring actions based upon injuries to the person not otherwise specified in the Code) and that a genuine issue of fact exists as to whether BASF negligently or wantonly performed an assumed duty to inspect.
As an initial matter, because the summary judgment under review expressly invokes a limitations ground, we will address whether the trial court erred in entering the summary judgment in favor of BASF on the basis that the Crabtrees’ claims were barred by the two-year statute of limitations relied upon by BASF. The Crabtrees argue that they substituted BASF for fictitiously named defendant “G” in a timely manner because, they say, they exercised reasonable diligence and BASF failed to show that it would be prejudiced by its being substituted as a defendant. On the other hand, BASF argues that it was not required to show that it would be prejudiced if the relation-back principle applies to 'effectively toll the statute of limitations. Additionally, BASF argues that the Crabtrees did not properly substitute BASF for fictitiously named defendant “G” because, it says, in their fourth amended complaint, the Crabtrees stated that they wanted to “add,” as opposed to “substitute,” BASF as a defendant; BASF further argues that the Crabtrees were not ignorant of BASF’s identity before the applicable limitations period expired.
We conclude that the summary judgment cannot properly be affirmed on the basis that the claims against BASF were barred by the statute of limitations.[1] The record suggests that the Crabtrees exercised reasonable diligence in substituting BASF for a fictitiously named defendant pursuant to Rule 9(h), Ala. R. Civ. P., so as to negate BASF’s limitations argument.
In Ex -parte Bowman, 986 So.2d 1152 (Ala.2007), a plaintiff was held to have exercised reasonable diligence in naming a co-employee in place of a fictitiously named party. Under Bowman, evidence of a claimant’s mere prior knowledge of the identity of a person and his or her job is insufficient evidence, by itself, to indicate that a claimant had the information necessary to name the party when “[tjhere [was] no logical and necessary linkage between knowledge that an individual had responsibility for the quality of the product produced and knowledge that such individual was a participant in acquiring, installing, and modifying the machine that makes the product.” 986 So.2d at 1157.
When the Crabtrees were informed that J.F. Pate and CHP had performed the contracting work related to the parking deck, they were likewise informed that the polyurethane material that had been applied to the parking deck was manufactured by Degussa. Immediately after learning that information, the Crabtrees filed their second amended complaint to substitute J.F. Pate and CHP as parties to the action. BASF posits in its appellate brief that, because the Crabtrees were made aware that Degussa, a BASF subsidiary, was somehow involved with the polyurethane material, the Crabtrees necessarily failed to act reasonably by not also adding Degussa or BASF as a defendant *792 at that time (which was within a few days of when, according to BASF, the limitations period would have expired). We disagree; the limited knowledge that the Crabtrees had been given regarding De-gussa’s merely having manufactured the polyurethane material would not have required a reasonable person to add Degussa as a defendant. In a tort action, such as this case, in which the manner that a certain product was applied, or the way a certain action in the application process was performed, is alleged to have thereafter proximately caused an injury, the mere manufacturer of the material that was subsequently applied incorrectly is not, ipso facto, a proper defendant; similarly, in a common slip-and-fall case involving a slippery, wet floor covered with cleaning solvent, it is not the maker of the solvent that is generally a proper defendant but, rather, the person who left the solvent in a hazardous position. In our view, the Crabtrees acted in a reasonably diligent manner in their discovery efforts and in their substitution of Degussa for fictitiously named defendant “G” just a few days after learning for the first time that De-gussa had played a role in applying the polyurethane material to the parking deck.
BASF further argues that the Crab-trees’ failure to actually add it as a defendant until March 2007 is proof of the Crab-trees’ lack of diligence so as to prevent relation back of the amendment to the complaint. We disagree. It appears that the Crabtrees treated BASF as if it were the same entity as Degussa once BASF had injected itself into the litigation by, on its own initiative, filing an answer to the complaint stating that BASF, and not De-gussa, was the proper defendant. We perceive BASF’s argument as an llth-hour attempt to retract its own pleading attempting to interpose itself into the litigation in lieu of Degussa, whom BASF claimed was not a proper party.
Because an appellate court may properly affirm a summary judgment on any ground apparent of record “unless due-process constraints require otherwise,” Wheeler v. George, 39 So.3d 1061, 1083 (Ala.2009), we next address whether the summary judgment in favor of BASF is due to be affirmed on the alternative basis that BASF is not liable to the Crab-trees as a matter of substantive law. The Crabtrees argue that the issue whether BASF voluntarily assumed a duty to inspect is necessarily a question of fact because such questions are generally to be viewed in light of all the pertinent facts and circumstances; on the other hand, BASF asserts that assumption-of-duty issues may properly be resolved as questions of law. We agree with the Crabtrees that, under Alabama law, whether a duty to others has been assumed through a party’s affirmative conduct is to be determined in light of all the facts and circumstances. See Bryan v. Alabama Power Co., 20 So.3d 108, 119 (Ala.2009); see also Springhill Hosps., Inc. v. Larrimore, 5 So.3d 513, 516 (Ala.2008) (scope of a pharmacist’s voluntary undertaking is fact-specific).
The Crabtrees submitted to the trial court a letter, sent by a manager of “ChemRex, Inc.,” a corporate entity renamed and merged into BASF, that was addressed to CHP’s owner; in that letter, the manager stated that, because of “complications” that had occurred with respect to “the previous job” (i.e., improper site preparation and product application in placing a topcoat upon the surface of a lower deck of the Mobile Infirmary garage in question), he and the owner had “agreed that representatives from ChemRex, Inc.[,] would be present during various times of the project to inspect the preparatory work, application of the products and to *793 provide any technical assistance that may be required” (emphasis added). The manager further recommended that an inspection take place “at least once a week to insure that all parties involved are in agreement with the manufacturer’s instructions.” In addition, CHP’s owner testified that he had relied upon his understanding of the agreement that ChemRex “would have somebody there to inspect the preparatory work” and “to inspect the application of the products.” Finally, it is certainly foreseeable that invitees, such as Edward Crabtree, who walk to and from parked cars at a medical-center garage may slip and fall while traversing a parking deck coated with material that has been improperly applied. Although we acknowledge that the record also contains evidence indicating that the extent of ChemRex’s authority was limited to merely making recommendations to CHP when requested or when a ChemRex employee observed a condition that warranted attention, we believe that, given the current state of the record, the trier of fact must resolve the dispute concerning whether BASF, through ChemRex, voluntarily assumed, and breached, a duty to inspect the installation of the polyurethane material so as to have injured the Crabtrees. See King v. National Spa & Pool Inst., Inc., 570 So.2d 612, 615 (Ala.1990) (quoting Restatement (Second) of Torts § 324A (1966)).
On the basis of the foregoing facts and authorities, the summary judgment entered in favor of BASF is reversed. The cause is remanded for further proceedings.
REVERSED AND REMANDED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.
PITTMAN, J., dissents, with writing.

. Although BASF omitted listing limitations as an affirmative defense in its responsive pleadings, the Crabtrees do not assert that that omission amounts to a waiver of that defense.