BARBARA WATERS *v.* EDMUND AUTUORI ET AL.

EDWARD HADIGIAN ET AL. *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

RONALD CHRISTOFORO ET AL. *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

VINCENT F. TRIPODINA *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

ARMAND AUDETTE ET AL. *v.* EDMUND AUTUORI ET AL.

THOMAS MURTHA *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

DONALD REILLY *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

ARMAND AUDETTE ET AL. *v.* ARTHUR ANDERSEN AND COMPANY ET AL.

CHRISTINE SIRACUSA ET AL. *v.* COLONIAL REALTY ET AL.

STEVEN LIEBMAN *v.* EDMUND AUTUORI ET AL.

ROBERT CALNEN *v.* EDMUND AUTUORI ET AL.

RONALD CORRENTI *v.* EDMUND AUTUORI ET AL.
(15190)

Peters, C. J., and Callahan, Borden, Berdon and Norcott, Js.

Argued January 10—officially released May 7, 1996

*Richard A. Bieder*, with whom were *Joel Faxon* and, on the brief, *Lillian C. Gustilo*, for the appellants (plaintiffs).

*William H. Narwold*, with whom were *Charles D. Ray, Michael R. Young*, pro hac vice, and, on the brief, *Louis A. Craco*, pro hac vice, *Stacey E. Paradise*, pro hac vice, and *Richard I. Miller*, pro hac vice, for the appellee (defendant American Institute of Certified Public Accountants).

PETERS, C. J. The dispositive issue in this appeal is whether the promulgation of professional accounting standards is sufficient, by itself, to impose upon the promulgating professional organization a duty of care to an unknown third party who relies on the opinion of a certified public accountant claiming to have followed those standards. The plaintiff Barbara Waters (plaintiff) brought this action against the defendant American Institute of Certified Public Accountants (AICPA), and others,[1] on behalf of herself and as a representative of a class of persons who had lost the money they had invested in a limited partnership. The plaintiff sought damages for the AICPA's allegedly negligent promulgation of professional accounting standards. Alleging a failure to state a claim upon which relief can be granted, the AICPA moved to strike those counts of the plaintiff's second amended complaint that were directed toward it. The trial court granted the motion to strike and rendered partial judgment in favor of the AICPA. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Sassone* v. *Lepore*, 226 Conn. 773, 780, 629 A.2d 357 (1993); *Michaud* v. *Wawruck*, 209 Conn. 407, 408, 551 A.2d 738 (1988). Accordingly, we assume as true the following facts as alleged in the plaintiff's second amended complaint. The AICPA is a national professional organization of certified pub-

---

[1] The plaintiff named as defendants, in addition to the AICPA, thirty-eight individuals, three banks, three accounting firms, three partnerships, two corporations, two law firms and the Federal Deposit Insurance Corporation.

lic accountants. One of the purposes of the AICPA is the promotion and maintenance of professional accounting practices. In furtherance of this purpose, the AICPA has promulgated professional accounting standards. The bylaws of the AICPA require its members to adhere to its standards in the performance of their duties. The AICPA recognizes that the accounting profession has responsibilities to the public as well as to its clients.

In November, 1986, the plaintiff purchased a partnership interest in Colonial Potomac Limited Partnership (Colonial Potomac). Colonial Potomac had solicited the purchase of partnership interests by distributing various marketing documents to potential investors. Colonial Potomac's marketing documents included financial reports prepared by Kostin and Company (Kostin), an accounting firm that is a member of the AICPA. The financial reports, which included forecasts of Colonial Potomac's expected future economic performance, contained a statement that, in preparing these forecasts, Kostin had followed standards promulgated by the AICPA. The plaintiff, in deciding to invest in Colonial Potomac, relied on information provided in the financial reports prepared by Kostin. The plaintiff eventually lost the money she had invested in Colonial Potomac.

The plaintiff's complaint alleged that Kostin, in one of two ways, had prepared unreasonable financial forecasts for use in Colonial Potomac's marketing documents. Kostin had either failed to follow AICPA standards or, if it had followed the standards, the standards themselves had been negligently promulgated.

On the latter theory, count twenty-six of the complaint alleged that the AICPA owed a duty of care to the plaintiff and had violated that duty by its negligent promulgation of standards that it knew, or should have known, would invite reliance by third parties such as the plaintiff and would thereby create an unreasonable

risk of harm to them. Count twenty-six further alleged that the AICPA's negligent promulgation of standards had caused the plaintiff to suffer economic harm and emotional distress. Count twenty-seven of the complaint alleged that the plaintiff had suffered emotional distress as a result of the negligence of all of the defendants.

The AICPA moved to strike counts twenty-six and twenty-seven of the plaintiff's second amended complaint to the extent that they alleged claims against it. The trial court granted the AICPA's motion on the grounds that: (1) the AICPA owed no duty of care to the plaintiff; and (2) the plaintiff had failed to allege the elements necessary to establish a claim against the AICPA for negligent infliction of emotional distress. The trial court first determined that, under existing case law from Connecticut trial courts and from courts in other jurisdictions, a certified public accountant owes a duty of care to a third party only if the accountant and the third party are in privity or have a "relationship sufficiently intimate to be equated with privity." The trial court then concluded that the AICPA did not owe a duty of care to the plaintiff under these principles of accountant liability, and that "[t]he law cannot be expanded to create a duty on the part of the AICPA, as the promulgator of professional standards, that is broader than the duty owed under Connecticut law by the practitioners who are expected to conform to [those standards]." In striking count twenty-seven as against the AICPA only, the trial court further concluded that the plaintiff's complaint was devoid of any allegations indicating how the AICPA should have realized that its promulgation of standards would create an unreasonable risk of causing emotional distress that might result in "illness" or "bodily harm" to the plaintiff. After its denial of the plaintiff's motion for reconsideration, the

trial court rendered partial judgment in favor of the AICPA. This appeal followed.[2]

The plaintiff claims that the trial court improperly concluded that the AICPA did not owe her a duty of care, as a matter of law, and thus improperly struck counts twenty-six and twenty-seven of her complaint as against the AICPA. The plaintiff has not alleged either a privity relationship or a statutory basis that could possibly impose a duty of care to her on the part of the AICPA. Rather, the plaintiff claims that the AICPA owed her a duty of care solely because it had promulgated professional accounting standards that had been followed by Kostin, upon whose financial reports she had relied in deciding to invest in Colonial Potomac. We disagree with the plaintiff that the AICPA's promulgation of standards establishes a cognizable duty of care owed by the AICPA to her.[3]

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted; internal quotation marks

[2] The AICPA was named as a defendant in twelve separate class actions, each of which involved claims arising from investments in failed limited partnerships. By agreement of the parties to these twelve actions, the AICPA moved to strike all counts against it in the plaintiff's complaint. The parties agreed that the ruling of the trial court on that one motion would apply to all twelve actions. The trial court rendered judgments granting the AICPA's motion to strike as against the plaintiff in this case and as against the plaintiffs in the other eleven actions. The plaintiffs from the twelve actions appealed jointly from the judgments of the trial court.

[3] The AICPA contends, as an alternate ground for affirmance of the trial court's judgment, that the statute of limitations bars the plaintiff's claims. Because we conclude that the trial court properly determined that the AICPA owed no duty of care to the plaintiff as a matter of law, we need not address the issue of whether a statute of limitations defense may properly be raised in a motion to strike.

omitted.) *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214–15, 618 A.2d 25 (1992). If facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Westport Bank & Trust Co.* v. *Corcoran, Mallin & Aresco*, 221 Conn. 490, 496, 605 A.2d 862 (1992). In order to reverse the judgment of the trial court, therefore, this court must find that the allegations of the plaintiff's complaint, if proven, would constitute negligence by the AICPA. *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994).

The claims asserted by the plaintiff against the AICPA are grounded solely in negligence. There can be no actionable negligence, however, unless there exists a cognizable duty of care. Id., 384–85; *Frankovitch* v. *Burton*, 185 Conn. 14, 20, 440 A.2d 254 (1981). Whether a duty of care exists is a question of law to be decided by the court. *Shore* v. *Stonington*, 187 Conn. 147, 151, 444 A.2d 1379 (1982). The starting point of our analysis, therefore, is an examination of the allegations in the plaintiff's complaint to determine whether, if proven, they establish a cognizable duty of care.

We have often observed that "[t]he law does not recognize a 'duty in the air.' " Id., 151; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 171, 544 A.2d 1185 (1988). The plaintiff invokes principles of foreseeability as the basis for her contention that the AICPA owed her a duty of care. Specifically, the plaintiff claims that the AICPA owed her a duty of care because "it was foreseeable that persons relying on reports required to be prepared pursuant to the AICPA's standards would be injured if [the] AICPA negligently promulgated such standards . . . ." We disagree with the plaintiff's assumption that foreseeability is the fulcrum of duty. Even if it were foreseeable to the AICPA that an investor such as the plaintiff would rely on financial reports claimed to have been prepared in accordance with pro-

fessional accounting standards that the AICPA had promulgated,[4] we are unpersuaded that the AICPA owed the plaintiff a duty of care.

In predicating the existence of a duty of care on principles of foreseeability, the plaintiff misconstrues the concept of duty as our case law has delineated it. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 385. Because foreseeability is a necessary component of duty, the absence of foreseeability forecloses the existence of a duty of care. Id., 385–86; *Frankovitch* v. *Burton*, supra, 185 Conn. 20–21. The converse is not, however, true: the conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care. As we recently stated in *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 386: "Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considera-

---

[4] We need not decide in this case whether the plaintiff and her injuries were foreseeable to the AICPA because we conclude that the AICPA did not owe the plaintiff a duty of care, regardless of foreseeability. We nevertheless note that the plaintiff does not claim that she herself relied on, or was even familiar with, any of the professional accounting standards promulgated by the AICPA. Rather, the plaintiff's complaint alleges that the financial reports prepared by Kostin contained a statement that it had followed AICPA standards, and that the plaintiff relied on *Kostin's* statement when she decided to invest in Colonial Potomac. The complaint further alleges that the plaintiff was a member of a class of third persons who the AICPA knew or should have known would rely on its standards. Thus, the plaintiff was foreseeable to the AICPA, if at all, only as a member of a general and indefinite class of persons.

tions of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Citations omitted; internal quotation marks omitted.) Thus, foreseeability is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care.

In light of these principles, we conclude that the allegations in the plaintiff's complaint fail to establish a duty of care owed by the AICPA to the plaintiff. The plaintiff has alleged no privity of contract or statutory duty upon which to premise a duty of care. See *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994); *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982). Although the AICPA's literature recognizes a responsibility on the part of the accounting profession to its clients and to the public, we are persuaded that such an acknowledgment cannot reasonably be interpreted as an assumption by the AICPA of any particular duty of care to persons such as the plaintiff.

We note, at the outset, that the standards promulgated by the AICPA are, on their face, insufficient to establish a duty of care.[5] The AICPA has promulgated ten generally accepted auditing standards that outline the objectives governing the quality of services to be performed by certified public accountants when they examine their clients' financial statements and render opinions thereon.[6] These generally accepted auditing

[5] The plaintiff's complaint fails to specify the AICPA standards upon which Kostin allegedly relied when it prepared Colonial Potomac's financial reports.

[6] The generally accepted auditing standards, as approved and adopted by the membership of the AICPA, are as follows:

standards, however, lack specificity and set forth only a broad framework of due professional care to which accountants are expected to adhere. See footnote 6; see generally R. Kay & D. Searfoss, Handbook of Accounting and Auditing (2d Ed. 1989) pp. 5-6 through 5-7. In light of the level of generality at which these standards operate, they cannot establish a basis for the imposition of a duty of care to third parties.

To the extent that the allegations in the plaintiff's complaint can be construed to allege Kostin's reliance on AICPA standards that, although as yet unspecified,

"*General Standards*

"1. The audit is to be performed by a person or persons having adequate technical training and proficiency as an auditor.

"2. In all matters relating to the assignment, an independence in mental attitude is to be maintained by the auditor or auditors.

"3. Due professional care is to be exercised in the performance of the audit and the preparation of the report.

"*Standards of Field Work*

"1. The work is to be adequately planned and assistants, if any, are to be properly supervised.

"2. A sufficient understanding of the internal control structure is to be obtained to plan the audit and to determine the nature, timing, and extent of tests to be performed.

"3. Sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit.

"*Standards of Reporting*

"1. The report shall state whether the financial statements are presented in accordance with generally accepted accounting principles.

"2. The report shall identify those circumstances in which such principles have not been consistently observed in the current period in relation to the preceding period.

"3. Informative disclosures in the financial statements are to be regarded as reasonably adequate unless otherwise stated in the report.

"4. The report shall either contain an expression of opinion regarding the financial statements, taken as a whole, or an assertion to the effect that an opinion cannot be expressed. When an overall opinion cannot be expressed, the reasons therefor should be stated. In all cases where an auditor's name is associated with financial statements, the report should contain a clear-cut indication of the character of the auditor's work, if any, and the degree of responsibility the auditor is taking." 1 AICPA, Professional Standards § 150.02, pp. 81–82 (June 1, 1995).

are more particularized than the generally accepted auditing standards; see generally R. Kay & D. Searfoss, supra, p. 5-12; we are persuaded that even more particularized standards do not support the imposition of a duty of care on the AICPA. We reach this conclusion guided by two well reasoned federal cases that have considered and rejected the proposition that the AICPA owes to third parties a duty of care based solely on its promulgation of specific professional accounting standards.

In the first of these cases, *Appalachian Power Co. v. American Institute of Certified Public Accountants*, 177 F. Sup. 345 (S.D.N.Y.), aff'd, 268 F.2d 844 (2d Cir.) (per curiam), cert. denied, 361 U.S. 887, 80 S. Ct. 158, 4 L. Ed. 2d 121 (1959), public utility companies sought to enjoin the AICPA from publishing a proposed opinion letter that recommended the use of certain accounting procedures. The plaintiffs alleged that the publication of the opinion letter would have a detrimental effect on their financial statements. The United States District Court dismissed the plaintiffs' complaint on the ground that any adverse effect to them would be "collateral, not direct, an effect which incidentally flows from a justifiable act." *Appalachian Power Co. v. American Institute of Certified Public Accountants*, supra, 177 F. Sup. 351. The United States Court of Appeals for the Second Circuit affirmed the judgment of the District Court. Noting that "every professional body accepts a public obligation for unfettered expression of views and loses all right to professional consideration, as well as all utility, if its views are controlled by other criteria than the intellectual conclusions of the persons acting," the Court of Appeals concluded that the AICPA's publication of the opinion letter involved no breach of duty owed by the AICPA to the plaintiffs. *Appalachian Power Co. v. American Institute of Certified Public Accountants*, supra, 268 F.2d 845.

The second case similarly concluded that the AICPA does not owe to third parties a duty of care based solely on its promulgation of professional accounting standards. In *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants, Inc.*, United States District Court, Docket No. 86-C-712-S (W.D. Wis. Feb. 25, 1987), vacated in part on other grounds, 832 F.2d 104 (7th Cir. 1987), an individual credit union and an association of credit unions sought to enjoin the AICPA from publishing an audit and accounting guide that characterized deposits in credit unions as liabilities rather than equities. The plaintiffs alleged that the AICPA owed them a duty of care not to publish a guide that would lead accountants to reclassify the plaintiffs' deposits and thus cause them to suffer financial injury. In its decision dismissing the plaintiffs' complaint, the United States District Court, while recognizing that accountants might owe the plaintiffs a duty of care, expressly rejected any claim that the AICPA owed the plaintiffs a duty that would be breached by the publication of the guide. Id., 7.[7]

The decisions in *Appalachian Power Co.* and *Credit Union National Assn., Inc.*, support our conclusion that, in this case, the promulgation of professional accounting standards imposed on the AICPA no duty of care to the plaintiff. Like the plaintiff in this case, the plaintiffs in *Appalachian Power Co.* and *Credit Union National Assn., Inc.*, were third parties that allegedly had suffered indirect harm from the AICPA's promulgation of professional accounting standards. Stressing the intervening role of certified public accoun-

---

[7] The District Court ultimately held that the plaintiffs' claim against the AICPA based on an alleged breach of duty of care failed for a lack of a justiciable case or controversy. The United States Court of Appeals for the Seventh Circuit affirmed the District Court's denial of injunctive relief and dismissal of the complaint on that ground. *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants, Inc.*, supra, 832 F.2d 107–108.

tants in applying AICPA standards, the courts in both cases concluded that no duty of care arose from the AICPA's promulgation of those standards. See *Appalachian Power Co.* v. *American Institute of Certified Public Accountants*, supra, 268 F.2d 845; *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants, Inc.*, supra, 7–8. We too are persuaded that the intended audience of the standards promulgated by the AICPA is the professional who applies them. The standards provide a framework for what ultimately is the opinion of the certified public accountant. That opinion is formulated and expressed in light of the accountant's professional judgment and discretion. Any liability arising from the standards, therefore, would be premised on an accountant's application of AICPA standards in his or her exercise of professional judgment rather than on the standards themselves. Accordingly, the promulgation of the standards is not a basis for imposing a duty of care to the plaintiff on the part of the AICPA.

While unable to distinguish the holdings of these federal cases, the plaintiff urges us to disregard these decisions and to rely instead on the terms of § 324 A of the Restatement (Second) of Torts[8] as interpreted by the Supreme Court of Alabama in *King* v. *National Spa & Pool Institute, Inc.*, 570 So. 2d 612 (Ala. 1990), on appeal

[8] Section 324 A of the Restatement (Second), Torts (1965), provides: "Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

after remand sub nom. *King* v. *S.R. Smith, Inc.*, 578 So. 2d 1285 (Ala. 1991). The plaintiff argues that, pursuant to the principles of law contained in § 324 A, the voluntary promulgation of professional accounting standards by the AICPA required the AICPA to assume a cognizable duty of care to third parties such as herself. We disagree that § 324 A and decisions premised upon § 324 A are applicable in the circumstances of this case.

By its plain language, § 324 A recognizes a cause of action arising out of the rendering of services only for negligence that causes "physical harm" to a "third person or his things." See footnote 8. The Restatement defines "physical harm" as "the *physical impairment* of the human body, or of land or chattels." (Emphasis added.) 1 Restatement (Second), Torts § 7 (3) (1965); see also id., § 15 (defining "bodily harm" as "any physical impairment of the condition of another's body, or physical pain or illness"). The claim asserted by the plaintiff against the AICPA is a claim for commercial loss based on her lost investment expectations. Such a claim does not fall within the confines of "physical harm" as that term is used in § 324 A. See, e.g., *Sound of Market Street, Inc.* v. *Continental Bank International*, 819 F.2d 384, 392 (3d Cir. 1987); *Devine* v. *Roche Biomedical Laboratories, Inc.*, 637 A.2d 441, 447–48 (Me. 1994), on appeal after remand, 659 A.2d 868 (Me. 1995); *Clinical Perfusionists, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 336 Md. 685, 702–703, 650 A.2d 285 (1994).

The Restatement's express limitation on the type of injury that may constitute "physical harm" within § 324 A is fully in accordance with our own case law. Recently, in *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 583–84, 657 A.2d 212 (1995), we recognized a clear distinction between commercial loss and property loss. In light of this distinction, we construed the phrase "damage to property" in General Stat-

utes § 52-572h (b)[9] to refer only to damage to or the loss of use of tangible property and not to encompass losses that are purely commercial. Id. Because, properly construed, the term "physical harm" in § 324 A, does not include nonfulfillment of commercial expectations, that section cannot provide a basis for holding the AICPA liable to compensate the plaintiff for her commercial loss.

In the absence of a claim of "physical harm," § 324 A cannot furnish a basis of recovery for the plaintiff's claim of emotional distress. Without alleging any such physical harm, the plaintiff's complaint alleges only that she suffered emotional distress that *exposed [her] to the risk* of illness or bodily harm." (Emphasis added.) Section 324 A cannot logically be construed to permit recovery for emotional distress unaccompanied by any physical impairment without contravening the express limitation on liability contained in that section itself. All the cases that premise liability on § 324 A, including *King* v. *National Spa & Pool Institute, Inc.*, supra, 570 So. 2d 613–14, have involved claims of personal injury or property damage. Despite the plaintiff's argument to the contrary, we are persuaded that these cases neither advance nor support an interpretation of § 324 A that encompasses negligence that causes emotional distress without more. Accordingly, because the injuries claimed by the plaintiff do not fall within the ambit of § 324 A, that provision does not support the plaintiff's claim that the AICPA owed her a duty of care.

The conclusion that the plaintiff has not stated a cognizable cause of action in the circumstances of this

---

[9] General Statutes § 52-572h provides in relevant part: "Negligence actions. Doctrines applicable. Liability of multiple tortfeasors for damages. . . .

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence

case finds support not only in existing analogous precedents, but also in cogent reasons of public policy. It is axiomatic that we must consider such policy concerns as are relevant because "[i]t is a fundamental assumption of jurisprudence that rules of law have an impact on the manner in which society conducts its affairs." *Maloney* v. *Conroy*, 208 Conn. 392, 403–404, 545 A.2d 1059 (1988); see *Shore* v. *Stonington*, supra, 187 Conn. 152–53. It is not difficult to envisage the consequences that would ensue if the voluntary promulgation of professional accounting standards were held to impose on the AICPA a duty of care to a third party who neither is specifically identifiable nor has any relationship with the AICPA aside from reliance on the professional opinion of a certified public accountant who allegedly relied on published AICPA standards. In effect, the AICPA would be at risk of being called upon to defend its standards in any dispute challenging the propriety of the professional services of an AICPA member. In the face of such broad exposure, at least to the costs of litigation and possibly to liability for damages, the AICPA and other similarly situated professional organizations might well curtail their laudable and salutary efforts to broaden and strengthen professional standards. We are persuaded that this chilling effect would benefit no one—not the members of professional organizations, not their clients and not the public at large. The plaintiff has identified no countervailing benefit that would warrant the imposition of liability upon the AICPA in the form of a duty of care in the promulgation of professional accounting standards in the alleged circumstances of this case.

We conclude, therefore, that the allegations in the plaintiff's complaint, even taken as true and construed in a light most favorable to the plaintiff, fail to establish

of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. . . ."

a duty of care owed by the AICPA to the plaintiff based solely on its promulgation of professional accounting standards. The only connection between the plaintiff and the AICPA is that the plaintiff, in deciding to invest in Colonial Potomac, allegedly relied on the financial reports prepared by Kostin and that Kostin, in turn, allegedly had prepared those reports in conformity with standards promulgated by the AICPA. We are persuaded that these allegations fail to provide a nexus between the AICPA's promulgation of professional accounting standards, on the one hand, and the plaintiff and the disappointment of her commercial expectations, on the other hand, that is sufficient to impose a duty of care on the AICPA.

We thus concur in the judgment of the trial court that the AICPA, as a matter of law, did not owe to the plaintiff a duty of care based solely on its promulgation of professional accounting standards. Although we reach this result for reasons that differ from those upon which the trial court relied, we conclude that the trial court properly granted the motion to strike those counts of the plaintiff's complaint that asserted claims against the AICPA. See *PaineWebber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 188, 585 A.2d 654 (1991); *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 532, 461 A.2d 1369 (1983).

The judgment is affirmed.

In this opinion CALLAHAN, BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. This class action brought by the plaintiff, Barbara Waters (plaintiff), is one of twelve class actions wherein damages are sought for thousands of investors as a result of a massive fraud perpetrated against them by the now defunct Colonial Realty Company (Colonial). All twelve class actions, involving dif-

ferent real estate investment limited partnership agreements organized by Colonial, named as a defendant the American Institute of Certified Public Accountants (AICPA), a professional regulatory body that establishes professional and auditing standards (standards) for its member certified public accountants and accounting firms. Also named as defendants were the individual certified public accounting firms that prepared the respective financial projections and forecasts of the expected economic performance (financial forecasts) for the various Colonial investments. These financial forecasts were used to promote the investments and entice investors such as Waters to invest in the limited partnerships organized by Colonial.

The defendant Kostin and Company (Kostin) was the certified public accounting firm that prepared the financial forecasts for Colonial Potomac Limited Partnership, the particular limited partnership in which Waters invested. Kostin, like the other certified public accounting firms employed by Colonial, stated in its financial forecasts that they were prepared in accordance with the standards established by the AICPA. The plaintiff alleges that the individual certified public accounting firms were negligent in preparing the financial forecasts upon which the investors relied because they did not follow the standards established by the AICPA, or *in the alternative*, if the accounting firms did follow the AICPA's standards, the AICPA was negligent in promulgating such standards. In each class action, the AICPA moved to strike the counts of the complaint directed against it, arguing that, as a matter of law, it owed no duty to the individual investors. By agreement of the parties in each of the class actions, the decision in the plaintiff's case would apply to the other eleven actions. The trial court subsequently granted the AICPA's motion to strike. Judgment was rendered in favor of the AICPA in each case and this

appeal was taken by all of the plaintiffs. In my view, the plaintiff's claim with respect to the AICPA's alleged negligence is legally sufficient.

I agree with the majority that a legal duty of care is not created merely because an injury is foreseeable, but that "the absence of foreseeability forecloses the existence of a duty of care." Rather, the pivotal consideration in determining whether a legal duty exists is " 'the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' W. Prosser & W. Keeton, [Torts (5th Ed. 1984)] § 43, p. 281." *RK Constructors, Inc.* v. *Fusco*, 231 Conn. 381, 386, 650 A.2d 153 (1994). Additionally, it is pertinent in this case to note that through their conduct, individuals may voluntarily assume a legal duty. W. Prosser & W. Keeton, supra, § 56, p. 378 ("idea of voluntary assumption of a duty by affirmative conduct runs through a variety of cases . . . [m]ost of the decisions have involved only pecuniary loss"); see also 2 Restatement (Second), Torts § 324 A (1965).[1]

My analysis begins by clarifying the principal claim against the AICPA, which is set forth in the twenty-sixth count of the plaintiff's complaint.[2] Contrary to

[1] The Restatement (Second) of Torts, § 324 A (1965), provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person *or his things*, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis added.)

Comment (b) to § 324 A provides: "This Section *applies to any undertaking to render services to another*, where the actor's negligent conduct in the manner of performance of his undertaking, or his failure to exercise reasonable care to complete it, results in physical harm to the third person *or his things*. It applies both to undertakings for consideration, and those which are gratuitous." (Emphasis added.)

[2] For the purpose of this dissent, I focus on the twenty-sixth count of the complaint wherein it alleges in part: "562 At all times relevant to this lawsuit,

the majority's characterization, under this count, the plaintiff sought damages against the AICPA *only in the alternative*. Essentially, the plaintiff alleges that either Kostin or the AICPA acted negligently. Consequently, if the fact finder concludes that Kostin was negligent in preparing its financial forecast because it failed to follow the standards established by the AICPA, then the plaintiff does not seek damages against the AICPA. If, however, the fact finder concludes that Kostin was not negligent in rendering the financial forecasts because it followed the standards of the AICPA, then the plaintiff seeks damages against the AICPA, alleging that it negligently promulgated those standards.

Under the allegations of the plaintiff's complaint, not only is it foreseeable that an investor would be harmed if the standards employed were negligently promulgated, but public policy requires that the AICPA be held accountable for its conduct. The AICPA, in its statement of purpose, voluntarily assumes "to assist in the maintenance of standards for entry into the profession" and "to develop and improve accounting education." Indeed, as

[the] defendant Kostin stated that they followed and relied on the technical Standards and/or Guidelines promulgated by or under authorization from AICPA, or the Council [of American Certified Public Accountants], and publicly acclaimed such use and reliance, as suggested by the AICPA standards, by stating that the Colonial Potomac Limited Partnership projections and/or forecasts were compiled in accordance with AICPA Standards, and that such compilation was in conformance with Guidelines for presentation of a compilation established by the AICPA.

"563 If [the] Defendant Kostin properly followed and/or used such AICPA Standards and/or Guidelines, as set forth in the preceding paragraph, then such Standards and/or Guidelines were negligently promulgated and did not reasonably protect [the] plaintiff.

"564 [The] Defendant AICPA, although it knew or should have known that its Standards and/or Guidelines, if defective as alleged in the preceding paragraph, would create an unreasonable risk of harm to third parties who relied on such Standards and/or Guidelines, permitted its Standards and/or Guidelines to be published, and therefore used by its members, without indicating, and/or requiring its members to indicate, the danger to which the third parties would expose themselves."

the majority concedes, "the AICPA's literature recognizes a responsibility on the part of the accounting profession to its clients and to the public . . . ." In an effort to accomplish those objectives, the AICPA publishes a two volume manual[3] that sets forth detailed standards, elaborations and illustrations for conducting an audit that is used to prepare financial statements that are relied upon by investors.[4] Although the standards promulgated by the AICPA are employed by member accounting firms, they are clearly established to benefit the clients of the member firms, e.g., the plaintiff and her class. The AICPA requires its members, such as Kostin, to comply with its standards.[5] Moreover, the AICPA requires its members to certify on their financial forecasts that, in preparing the document, the AICPA's standards were complied with.[6] Consequently, it is rea-

[3] This manual covers a number of topics: United States auditing standards; attestation standards; accounting and review services; code of professional conduct; bylaws; consulting services; quality control; peer review; tax practice; and personal financing planning.

[4] Nowhere in the record is it indicated that the AICPA sought to have the plaintiff specify the standards that she claims were negligently promulgated. Consequently, we have before us general allegations that encompass all of the AICPA standards and guidelines.

[5] In an introductory comment in its manual, the AICPA states that it "requires adherence to the applicable generally accepted auditing standards promulgated by [it]. . . . [M]embers [must] be prepared to justify departures from [the AICPA's Statements on Auditing Standards]." 1 AICPA Professional Standards (1995) p. 51.

Additionally, rule 202 of the Rules of Conduct of the Code of Professional Conduct of the American Institute of Certified Public Accountants provides: "A member who performs auditing, review, compilation, management consulting, tax, or other professional services shall comply with standards promulgated by bodies designated by Council [of American Certified Public Accountants]." 2 AICPA Professional Standards (1995) § 202.1, p. 4571.

[6] The AICPA manual, under its discussion of the fourth standard of reporting ("[t]he report shall either contain an expression of opinion regarding the financial statements, taken as a whole, or an assertion to the effect that an opinion cannot be expressed"); 1 AICPA Professional Standards (1995) § 508.04, p. 651; provides that a basic element of an auditor's standard report is "[a] statement that the audit was conducted in accordance with generally accepted auditing standards." Id., § 508.08, p. 652.

sonable for an individual who received a financial forecast concerning Colonial's investments to expect that the standards employed by Kostin in drafting the forecast were properly promulgated. For these reasons, the AICPA has a duty to act reasonably when promulgating standards so as not to mislead innocent investors.

In support of its position, the majority relies on two federal court opinions, of which the authoritative value of each with respect to the issue of duty is highly suspect. In *Appalachian Power Co.* v. *American Institute of Certified Public Accountants*, 177 F. Sup. 345 (S.D.N.Y.), aff'd, 268 F.2d 844 (2d Cir.) (per curiam), cert. denied, 361 U.S. 887, 80 S. Ct. 158, 4 L. Ed. 2d 121 (1959), "[o]n a theory of prima facic case of tort,[7] [several public utility companies sought] to enjoin [the AICPA] from distributing to its members and others a letter to the effect that [the AICPA] consider[ed] certain accounting procedures improper." Id., 268 F.2d 845. The United States District Court's opinion focused on whether the AICPA committed an *intentional tort* against the plaintiffs, not on whether the AICPA had a duty to investors to promulgate professional standards in a nonnegligent fashion. Id., 177 F. Sup. 349–51. Duty is an element of *negligence*, but is not an element of *an intentional tort.* Id.; W. Prosser & W. Keeton, supra, § 30. In affirming the District Court, the Court of Appeals for the Second Circuit stated: "We think the courts may not dictate or control the procedures by which a private organization expresses its honestly held views." *Appalachian Power Co.* v. *American Institute of Certified Public Accountants*, supra, 268 F.2d 845. Although the Court of Appeals stated that "[the AIC-

[7] "The plaintiffs predicate the validity of their complaint upon the doctrine of 'prima facie tort.' . . . [One of the essential elements of this cause of action requires that t]here must be an intent to injure [the] plaintiff, at least to the extent of infliction of *wrongful* harm upon [the] plaintiff without just cause or excuse." (Emphasis in original.) *Appalachian Power Co.* v. *American Institute of Certified Public Accountants*, supra, 177 F. Sup. 349.

PA's] action involves no breach of duty owed by them to the plaintiff," the court, in its one page per curium opinion, did not engage in any analysis of the issue that faces us today. Id. Moreover, the Court of Appeals never held that the AICPA did not owe a duty of care to third parties who rely on financial statements drafted pursuant to its standards in the context of an action based upon negligence. Similarly, in *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants*, United States District Court, Docket No. 86-C-712-S (W.D. Wis. February 25, 1987), vacated in part on other grounds, 832 F.2d 104 (7th Cir. 1987), the United States District Court was faced with an issue significantly different than the one presently before us. In that case, the plaintiffs challenged the AICPA's right to circulate an opinion letter to its members regarding the best method by which to classify savings accounts held in a credit union. Although, in passing, the District Court stated that there is not "an evident duty of care on the part of the AICPA toward credit unions which is breached by the publication of the [manual]"; id., 7; the Court of Appeals for the Seventh Circuit viewed the District Court's opinion narrowly: "The [District Court] thought that the plaintiffs' claim of injury depended on too many speculative steps."[8] *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants*, supra, 832

---

[8] The Court of Appeals stated: "There are so many links, each problematic, that it is impossible to trace concrete injury to the AICPA's decision to classify shares as 'liabilities' in the [manual]. We do not know whether accountants will treat shares as liabilities or instead choose to treat them as equity and explain why; we do not know whether either treatment as liabilities or explanations for departures will produce adverse consequences for credit unions and, if so, what the causes of those consequences may be. The plaintiffs want us to resolve a dispute—what is the 'right' accounting treatment of shares—without any clear understanding of the consequences either way or any clear link between choice and consequence." *Credit Union National Assn., Inc.* v. *American Institute of Certified Public Accountants*, supra, 832 F. Sup. 107.

F.2d 106. Because the Court of Appeals affirmed the District Court's dismissal for lack of a case or controversy, the District Court's decision is devoid of any discussion of whether the AICPA had a legal duty to act reasonably in issuing its standards. Id., 108.

The AICPA argues before this court that although it does not owe a duty to innocent investors, "[s]uch a conclusion does not . . . leave the [AICPA] unaccountable to anyone." The AICPA, however, never informs the court to whom it owes that duty. If the AICPA owes a duty to act reasonably when promulgating standards, then that duty must be owed to the innocent investors who act in reliance on financial forecasts that are prepared in accordance with those standards.

The majority's decision does a great injustice to the victims of Colonial's fraud. This injustice is clearly demonstrated when the legal standard of care expected of Kostin is applied in this case. Generally, an individual is expected to act as "a reasonable person under the same or similar circumstances" would act. W. Prosser & W. Keeton, supra, § 37, p. 236. In order to determine how a reasonable professional should act in a particular situation, professional standards of conduct may be admitted into evidence. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 8.7.1 ("if the issue is the proper conduct of a particular business or profession not within the common knowledge of the jury, evidence of the state of the art or the usual practice or custom of others in such field may be proved"). Consequently, Kostin may introduce the AICPA standards into evidence to prove that it acted reasonably, even if those standards may have been negligently promulgated. *Monroe* v. *Hughes*, 31 F.3d 772, 774 (9th Cir. 1993) ("an accountant's good faith compliance with Generally Accepted Accounting Principles and Generally Accepted Auditing Standards discharges the accountant's professional obligation to act with reasonable

care"). But, according to the majority in this case, the promulgator of the standards used to exculpate Kostin is free of any accountability. In other words, an accounting firm, such as Kostin, may be shielded from liability because of the AICPA standards, but the AICPA, according to the majority, owes no duty to investors to act in a reasonable manner when issuing professional standards, despite the fact that the public is invited to value and derive confidence from those standards. The logic of such a conclusion eludes me.

The majority asserts that public policy justifies its decision not to recognize a duty on the part of the AICPA to the investing public. If held accountable for their actions, the majority believes that professional associations, such as the AICPA, "might well curtail their laudable and salutary efforts to broaden and strengthen professional standards." I do not believe that holding an association accountable for its actions will induce such a harsh result. The public would be better served by simply requiring professional associations who choose to promulgate professional standards and invite the public to value and rely on documents that have been prepared in accordance with those standards, to act in a reasonable manner so as not to injure innocent persons.

It may very well be, and I have no reason to believe otherwise based upon the state of the pleadings and the record before us, that the AICPA has acted in a nonnegligent manner. If that is clearly the case, then the AICPA could be relieved of the litigation, short of a full trial, by simply moving for summary judgment on that ground.

In sum, I am of the opinion that, under the allegations of this complaint, the AICPA owed a duty to the plaintiff and the other individuals who invested in the limited partnerships of Colonial in reliance on the financial

forecasts drafted pursuant to the AICPA standards because: (1) the AICPA specifically assumed a duty to the investors; (2) the AICPA requires member certified public accounting firms, such as Kostin, to employ its standards when preparing financial forecasts; (3) such standards were promulgated for the benefit of the investors; (4) the AICPA requires members, such as Kostin, to state in their financial forecasts that the forecast was prepared in accordance with AICPA standards; and (5) it was reasonably foreseeable that, if the standards were negligently promulgated, investors, such as the plaintiff, could suffer substantial financial losses.

Accordingly, I respectfully dissent.