[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiffs, Paul F. Turner, David R. Avila and Daniel E. Turner have filed a complaint against the defendant, Barry Schlosser alleging that prior to March 1, 1995, the defendant and Kevin Moreland developed psychological assessment instruments, the rights to which were conveyed to Clarity Consulting Corporation (CCC), a corporation owned and controlled by Schlosser. In search of financial backing for the product, the defendant approached the plaintiffs, representing to them that the instruments were currently available for use, publishable, technically state-of-the-art and otherwise ready to market. The plaintiffs and the defendant formed a new corporation, Clarity Health Assessment Systems, Inc. (CHAS) to market and sell the instruments. Paul Turner and David Avila curtailed their clinical practices and Daniel Turner quit his employment to concentrate on the new venture. Until August 2, 1996, when the parties entered into a shareholder's agreement and employment agreements, the defendant continued to represent to the plaintiffs and potential clients that the instruments were ready to market. The plaintiffs allege in count one that the defendant's representations were CT Page 10961 false because the instruments were not ready to market, that the defendant knew his representations were false, that the defendant intended that the plaintiffs rely on these representations, and that the plaintiffs did rely upon them to their detriment. The plaintiffs allege in count two that the defendant should have known that his representations were false.
The defendant filed a counterclaim in which he alleges: (1) the plaintiffs fraudulently misrepresented the extent of capital and time which they could put into CHAS; (2) the plaintiffs' misrepresentations were negligent; (3) the plaintiffs converted personal property belonging to the defendant; (4) the plaintiffs intentionally interfered with the defendant's contractual relationship with CHAS by locking the defendant out of the CHAS office and seeking to reduce his majority ownership in the corporation, and failing that, to force him to resign as CEO and president of CHAS; (5) the plaintiffs intentionally interfered with the defendant's contractual relationship with CCC; (6) Paul Turner defamed the defendant in a grievance filed before the American Psychological Association; (7) the plaintiffs' actions were extreme and outrageous and were intended to inflict emotional distress on the defendant; and (8) the conduct of the plaintiffs violates the Connecticut Unfair Trade Practices Act (CUTPA).
The plaintiffs filed a motion to strike counts three through eight of the counterclaim on the ground that the claims alleged therein do not arise out of the same transaction as the intentional and negligent misrepresentations alleged in the plaintiffs' complaint.
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 495 A.2d 286 (1985). "In any action for legal or equitable relief, the defendant may file counterclaims against the plaintiff provided that each counterclaim arises out of the transaction that is the subject of the plaintiff's complaint. Practice Book § 116[1]. . . . The rule permits joinder of closely related claims arising out of the same transaction where such joinder is in the best interests of judicial economy." (Citation omitted.) Carothers v. ConnecticutBuilding Wrecking Co., 19 Conn. App. 216, 220, 561 A.2d 971
(1989), aff'd in part, rev'd in part, 218 Conn. 580, 590 A.2d 447
(1991). "The `transaction test' is one of practicality. . . . CT Page 10962 Where the underlying purposes of Practice Book § [§ 116, now Practice Book (1998 Rev.) § 10-10], to wit, judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action, are thwarted rather than served by the filing of a [counterclaim], the [counterclaim] may properly be expunged." (Internal quotation marks omitted.) Wallingford v. Glen Valley Associates, Inc.,190 Conn. 155, 161, 495 A.2d 525 (1983).
When viewing the facts as alleged in the counterclaims in the light most favorable to the defendant, Waters v. Autouri,236 Conn. 820, 825, 676 A.2d 357 (1996), the court concludes that plaintiffs' motion to strike counts three, four, five, seven and eight of the defendant's counterclaim must be denied. The allegations set forth in each of these counts are closely related to the claims made in the underlying complaint and arise out of the same circumstances as the plaintiffs' claims. In addition, pursuant to the policy rationale behind Practice Book § 116, now Practice Book (1998 Rev.) § 10-10, the allegations in these counts should be considered together with the plaintiffs' claims for the sake of judicial economy.
However, count six of the counterclaim alleging defamation against Paul Turner will be stricken by the court. The defendant's defamation claim does not directly involve the business of CHAS or CCC, or the parties' business relationship. Rather, it arises out of Paul Turner's filing of a grievance against the defendant before a professional association. The underlying purpose of judicial economy would be thwarted by the inclusion of the defamation claim.
Accordingly, the plaintiffs' motion to strike count six of the defendant's counterclaim is granted and the plaintiffs' motion to strike counts three, four, five, seven and eight of the defendant's counterclaim is denied.
D'ANDREA, J.