[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
The Defendants Board of Education and Deborah Wartonick have moved to strike the Seventh, Ninth and Tenth Counts of the complaint dated September 11, 1997. CT Page 9308
Statement of Facts
The complaint alleges that the defendant David Vibert sexually molested and abused her while she was a student in Regional School District No. 10 from age thirteen to eighteen both at the Har-Bur Middle School and the Lewis S. Mills High School. Vibert was employed by the Board of Education as a physical education teacher at the Har-Bur Middle School which the plaintiff attended from 1980 to 1982 and continued that employment during the period of the plaintiff's later schooling at the Mills High School during which time his sexual abuse continued. Complaint ¶¶ 2, 3-21.
The first five counts of the Complaint are directed to Vibert and are not the subject of the Motion to Strike. The plaintiff has brought four counts against the Board of Education. These include a claim for negligent supervision of Vibert (Sixth Count), a claim for negligent failure to implement and/or enforce policies and procedures for the prevention of sexual abuse (Seventh Count), a claim for negligent infliction of emotional distress (Eighth Count) and a claim under 42 U.S.C. § 1983
alleging a violation of the plaintiffs due process rights to bodily integrity and the right to be free from an intrusion on her personal security (Tenth Count). The Board of Education is seeking to strike the Seventh and Tenth Counts.
The plaintiff has also asserted a claim against the defendant Deborah Wartonick who was a physical education teacher at the Har-Bur Middle School during the relevant period of this case. (Ninth Count). The plaintiff alleges that Wartonick was aware of Vibert's inappropriate conduct toward the plaintiff and that a reasonable person in Wartonick's position would have suspected that Vibert's actions constituted indications of sexual exploitation and sexual abuse. Complaint, Ninth Count ¶ 22. The plaintiff has also alleged that Wartonick actually expressed to the plaintiff on at least two occasions her knowledge of and concern about Vibert's inappropriate conduct. Id. Notwithstanding that knowledge, Wartonick was negligent in that she failed to report Vibert's conduct to the Board of Education. Id. ¶¶ 23-24. Ms. Wartonick seeks to strike the Ninth Count.
Discussion of Law and Ruling
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book § 10-39; Ferryman v.CT Page 9309Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345,348, 576 A.2d 149 (1990); Blancato v. Feldspar Corp.,203 Conn. 34, 36, 522 A.2d 1235 (1987).
The court should view the facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them. Dennisonv. Klotz, 12 Conn. App. 570, 577, 532 A.2d 1311 (1987). In ruling on a motion to strike, the court must take as admitted all well-pled facts, and those necessarily implied thereby, and construe them in the manner most favorable to the pleader. Norwich v.Silverberg, 200 Conn. 367, 370, 511 A.2d 336 (1986).
Failure to Implement or Enforce Policies
The defendant Board of Education argues that "[t]here is no common law duty imposed upon educators, agencies or other public bodies to establish" policies to prevent sexual abuse. While the defendant provides no direct citation to support the foregoing statement, it does rely by analogy on cases such as Waters v.Autuori, 236 Conn. 820, 676 A.2d 357 (1996), where the Court reviewed the dual aspects of legal duty: forseeability and public policy:
 "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) RK Constructors, Inc. v. Fusco Corp., supra, 231 Conn. 385. Because foreseeability is a necessary component of duty, the absence of foreseeability forecloses the existence of a duty of care. Id., 385-86; Frankovitch v. Burton, supra, 185 Conn. 20-21. The converse is not, however, true: the conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care. As we recently stated in RK Constructors, Inc. v. Fusco Corp., supra, 386: "Many harms are quite literally `foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we CT Page 9310 recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." (Citations omitted; internal quotation marks omitted.) Thus, foreseeability is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care.
236 Conn. at 837-828.
In Waters the plaintiffs allegedly suffered financial loss as a result of the defendant accountants' adherence to standards promulgated by the American Institute of Certified Public Accountants (AICPA). The Court held that although the harm suffered by the plaintiffs was a forseeable consequence of the AICPA's conduct, the AICPA owed no duty to the plaintiffs because the imposition of such a duty could have a chilling effect on the AICPA and other similarly situated professional organizations that "might well curtail their laudable and salutary efforts to broaden and strengthen professional standards." 236 Conn. at 835.
Unlike Waters, the Seventh Count does not appear to present any public policy dilemma. Clearly, "school children attending public schools during school hours are intended to be the beneficiaries of certain duties of care." Burns v. Board ofEducation, 228 Conn. 640, 648, 638 A.2d 1 (1994). The Court inBurns recognized that:
 At least during school hours on school days, when parents are statutorily compelled to relinquish protective custody of their children to a school board and its employees, the superintendent has the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated. See, e.g., McLeod v. Grant County School District, supra, 42 Wash.2d 319-20. As a matter of policy, this conclusion comports with our case law that has traditionally recognized that children require special consideration when dangerous conditions are involved. Neal v. Shiels, Inc., supra, 166 Conn. 11-12. CT Page 9311
228 Conn. at 649-650.
The danger which could befall a school child like the plaintiff as the result of the Board's failure to have or implement a policy on sexual abuse of students by teachers, would seem to be at least as great as the dangerous condition at issue in Burns (icy sidewalk). Therefore, this court is not prepared to hold that as a matter of law the defendant School Board had no duty to the plaintiff to adopt or enforce a policy concerning sexual abuse and the Motion to Strike the Seventh Count is denied.
Failure to Report Suspected Abuse
In the Ninth Count the plaintiff has alleged that defendant Wartonick was negligent for failing to report to the Board of Education her stated suspicion of defendant's Vibert's misconduct toward the plaintiff. The defendants argue that this claim should be stricken because there is no private right of action under Connecticut General Statutes § 17a-101[1], the statute which mandates that teachers and others report suspected child abuse.
The plaintiff has not brought her negligence claim as a statutory action under § 17a-101. Instead, she has alleged that Wartonick has violated a common law duty to protect children such as the plaintiff, which duty has been recognized and codified in § 17a-101. In Parker v. Nelson, No. 107376 (Jun. 16, 1997, Booth, J) 1997 Ct. Sup. 6975, on which the defendants rely to support their argument that § 17a-101 does not create a private right of action, the court upheld a claim similar to that asserted in the Ninth Count on the grounds that the plaintiff had stated a cause of action in negligence per se and common law negligence:
 "Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles. . . ." Gore v. Peoples Savings Bank, 235 Conn. 360, 376, 665 A.2d 1341
(1995). "If a plaintiff alleges that a statute, ordinance or regulation has been violated, thereby relying on negligence per se, and also alleges that there is a causal connection between such negligence and the injuries sustained, a cause of action has been stated."[5] Commercial Union Ins. Co. v. Frank Perrotti Sons, Inc., 20 Conn. App. 253, 258, 566 A.2d 431 (1989). However, "[w]hile the violation of an CT Page 9312 applicable statute by a person governed by it is ordinarily negligence per se, to constitute a common-law cause of action, that negligence must have been a proximate cause of the injury for which damages are sought." Nolan v. Morelli, 154 Conn. 432, 444, 266 A.2d 380 (1967).
 The plaintiffs' complaint alleges that Nelson violated § 17a-101a by failing to report the instances of alleged child abuse communicated to her by Nadine Parker. The complaint further alleges that the plaintiffs are members of the class of individuals specifically protected by § 17a-101.[6]
The plaintiffs' complaint also alleges that as a result of the Nelson's failure to report the alleged abuse, the abuse continued and the plaintiffs were thereby injured.
 This court concludes that the plaintiffs' complaint states a viable cause of action for negligence per se in that the plaintiffs allege the violation of a statute and plead facts sufficient to allege a causal link between the statutory violation and the alleged injury.[7] Thus, the defendant's motion to strike counts three and four is denied.
For the forgoing reasons the Ninth Count does state a cause of action for negligence per se and/or common law negligence. Therefore, the Motion to Strike the Ninth Count is denied.
Claim against the Regional School District for violation of42 U.S.C. § 1983
The plaintiff has alleged that certain acts or omissions of the defendant Board of Education relating to policies and practices governing sexual abuse violated her "rights to bodily integrity and the right to be free from an intrusion on her personal security as guaranteed by the Fourteenth amendment to the United States Constitution . ." Complaint ¶ 27. In Monell v.New York City Dept. of Social Services, 436 U.S. 658 (1978), the United States Supreme Court decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation: at issue. Respondeat superior or vicarious liability will not attach under § 1983. Id., at 694-695. "It is only when the `execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." Springfield v.Kibbe, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting Monell, supra, at 694.) CT Page 9313
In Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court held that the failure to have a policy of adequately training police officers could serve as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. In Harris, the "policy" at issue was a city regulation which gave the city jailer the authority to decide when a prisoner required medical attention in combination with the fact that the city jailers received no medical training. The Court held that such a "policy" did not amount to a deliberate indifference to the rights of the prisoners.
The Court in Harris stated:
 We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in Monell, 436 U.S., at 694, and Polk County v. Dodson, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice Brennan's opinion in Pembaur v. Cincinnati, 475 U.S. 469, 483-484 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also Oklahoma City v. Tuttle, 471 U.S., at 823 (opinion of Rehnquist, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality — a "policy" as defined by our prior cases — can a city be liable for such a failure under § 1983.
 Monell's rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like CT Page 9314 this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.
489 U.S. at 388-390.
In Harris Justice O'Connor stated that local government liability under § 1983 for its sins of omission ought not be imposed absent some showing of"a high degree of fault on the part of city officials." Harris, supra, at 396 (O'Connor, J., concurring).
In the case of Stoneking v. Bradford Area School District,882 F.2d 720 (3d Cir. 1989), on which the plaintiff here relies, the plaintiff alleged the following: that the band teacher in her high school sexually abused and harassed her; prior to the time he first harassed her, he had sexually harassed another female student; the principal of the high school had actual knowledge of the harassment of the other female student and had failed to take appropriate action with respect to the band teacher. The Complaint in this case fails to allege that the Board of Education, the school principal or any other school official had any prior knowledge that Vibert had any predisposition to sexually abuse students.
The only allegation of any knowledge on anyone's part is that Deborah Wartonick knew or should have known about Vibert's improper relationship with the plaintiff. Under the "failure to train" theory of Harris, the Complaint could be read to allege that if the Board had had an adequate policy concerning reporting or detecting sexual abuse by teachers, then Wartonick would have reported Vibert and prevented his continued abuse of the plaintiff. However, the Supreme Court in Harris has stated that CT Page 9315 such a "but for" analysis provides an insufficient basis for governmental liability of "failure to train" under § 1983:
 Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury . . .
389 U.S. at 391.
The Complaint lacks sufficient factual allegations to support the legal conclusion that the Board's conduct constituted a "deliberate indifference" to the plaintiffs rights. Therefore, the Tenth Count fails to state a cause of action under § 1983 against the Board of Education and is hereby ordered stricken.
By the court,
Aurigemma, J.