[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
On June 12, 1997, the plaintiff, Phuc M. Nguyen ("Nguyen"), filed a four count complaint, naming as defendants, Newberry Industries, Inc. ("Newberry") and Newberry's "agent, servant and/or employee," Mark Corallo ("Corallo"). The plaintiff alleges wrongful termination in violation of General Statutes §31-290a (complaint, count I), negligent infliction of emotional distress (complaint, count II), and breach of contract (complaint, count IV) against Newberry, and intentional infliction of emotional distress against Corallo individually (complaint, count III).[1] On July 16, 1997, the defendants filed a motion to strike and a memorandum in support arguing that the plaintiff has not stated a cause of action for (1) wrongful discharge or discrimination under General Statutes § 31-290a; CT Page 10500 (2) negligent infliction of emotional distress by claiming that emotional distress resulted only from his discharge and the events leading up thereto; (3) intentional infliction of emotional distress against Corallo individually, because plaintiff has failed to allege facts sufficient to pierce the corporate veil or to establish that Corallo's actions were extreme and outrageous; and (4) breach of contract, because insufficient facts have been pleaded to establish a mutual intent to create an express or implied contract. On August 28, 1997, the plaintiff filed an objection to the motion with a memorandum. On September 9, 1997, the defendants filed a reply to the plaintiff's objection to the motion with a memorandum in support which contained arguments that are substantially the same as those in the original motion to strike filed on July 15, 1997.
DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . ." (Citation omitted; internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825-26, 676 A.2d 357 (1996). The motion to strike is the proper means of attacking a pleading that on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted. Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). If acts that the plaintiff alleges are insufficient to frame their causes of action, the plaintiff cannot prevail. Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 664-65, 613 A.2d 838
(1992). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210,215, 618 A.2d 25 (1992).
In count one of the complaint, the plaintiff alleges that he was unlawfully terminated in violation of General Statutes §31-290a. Defendants move to strike count one arguing that the plaintiff has failed to allege that he ever pursued or filed a workers' compensation claim, and thus has not stated a cause of action for wrongful discharge or discrimination under §31-290a (a). CT Page 10501
General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."
No reported appellate cases were found involving a defendant who had moved to strike a § 31-290a (a) complaint on the ground that the plaintiff had not filed a workers' compensation claim prior to being discharged. In Bundock v. Waste Managementof Connecticut, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 123903 (February 22, 1993, Lewis, J.) (8 Conn. L. Rptr. 263), however, a case with facts that are substantially similar to those in the present case, the defendant's motion to strike was denied.[2] InBundock, the defendant moved to strike the complaint on the ground that the plaintiff "did not file a notice of claim for workers' compensation until October 30, 1991, and therefore that he could not have been discharged on August 30, 1991, in violation of General Statutes 31-290a (a). . . ." Id. Judge Lewis denied the motion to strike stating: "It is clear that at the time of discharge in August, 1991, the plaintiff had not yet filed a claim for workers' compensation, and hence the termination of his employment could not constitute a violation of General Statutes 31-290a (a) for that reason. Paragraph 9 of the amended complaint, however, alleges that plaintiff was discharged because he notified the defendant that he `would exercise the rights afforded him under the Connecticut Workers' Compensation Act.' This allegation sufficiently states, in my opinion, a cause of action for a violation of 31-290a (a), in that it is claimed that discharge followed notice that the plaintiff `otherwise exercised the rights' afforded him by the statute. If the actual filing of a claim was a prerequisite to a recovery under the statute, there would be no need to refer to someone who `otherwise exercised' his rights. It would seem that this phrase encompasses an announcement to an employer of a present intent to file a compensation claim in the future, which then precipitates a discharge from employment. This interpretation is in accord with the description of 31-290a in Ford v. Blue Cross BlueShield of Connecticut. Inc., 216 Conn. 40, 52, 578 A.2d 1054
(1990) . . . ." Bundock v. Waste Management of Connecticut,Inc., supra, 8 Conn. L. Rptr. 263. CT Page 10502
In the present case, the plaintiff has alleged that the defendants knew that he had suffered a work related injury, (complaint ¶ 7) and coerced him to conceal the fact that the injury was work related.[3] Plaintiff further alleges that he provided Corallo with a light duty note issued by Enfield Ambulatory Center, (complaint ¶ 10), and that on February 22, 1997, two days before receiving his pink slip, his wife was informed by Corallo that "plaintiff's work injury was going to increase his workers' compensation rates[,]" and that due to the plaintiff's injury, "he was not going to receive a rebate" from his workers' compensation insurer. (Complaint ¶ 18.)
The plaintiff here, like the plaintiff in Bundock, has not alleged filing or pursuing a workers' compensation claim prior to his termination. Nevertheless, the statute's plain language, demonstrates that the actual filing of a claim is not a prerequisite to a recovery. General Statutes § 31-290a (a). See also Bundock v. Waste Management of Connecticut, Inc.,
supra, 8 Conn. L. Rptr. 263. Since the alleged injury occurred on January 8, 1997 and the termination occurred in February of 1997, the plaintiff was well within the one year period of limitations for filing a workers's compensation claim set forth in General Statutes § 31-294. Moreover, the statements of Corallo made on February 22, 1997, regarding the loss of a workers' compensation insurance rebate and increased workers' compensation rates, demonstrate that the defendants expected the plaintiff to file a workers' compensation claim. (Complaint ¶ 18.)
In the court's opinion the plaintiff here, like the plaintiff in Bundock, has "otherwise exercised" his rights under the statute. The plaintiff's complaint therefore alleges sufficient facts to sustain a cause of action under General Statutes31-290a, and thus, defendants' motion to strike count one of the plaintiff's complaint should be and is herewith denied.
In the second count of the complaint, the plaintiff seeks recovery for damages resulting from negligent infliction of emotional distress. Defendants move to strike count two arguing that plaintiff has failed to state a cause of action by claiming only that emotional distress resulted from his discharge and the events leading up thereto.
"[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination CT Page 10503 process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. . . ." (Citations omitted; internal quotation marks omitted.) Parsonsv. United Technologies Corp., 243 Conn. 66, 88-89, ___ A.2d ___ (1997). Rather, such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge. Chieffalo v.Norden Systems, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 127694 (Sept. 12, 1996, Ryan, J.) (12 Conn. L. Rptr. 656, 657); Skierkowski v. CreativeGraphics Services, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463242 (May 5, 1995, Handy, J.). An example of unreasonable conduct occurring at the time of discharge is where a "meeting or any other aspect of the actual discharge was done in [a] . . . humiliating manner. . . ." Leniart v. C S Distributors, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516354 (Jan. 21, 1994, Corradino, J.) (8 C.S.C.R. 688). "Nonetheless, where a plaintiff was terminated for legitimate business reasons, it has been held that a defendant cannot be liable for the normal distress and hurt feelings that result whenever anyone is discharged from employment." Emanuelev. Boccaccio Susanin, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 379667 (Dec. 12, 1994, Wagner, J.).
In the present case, the plaintiff alleges that he was (1) instructed by Corallo on February 21, 1997, "to just go home with no explanation" (complaint ¶ 17); (2) coerced to conceal the fact that his injury was work related and to not file a workers' compensation claim (complaint ¶¶ 8, 23); (3) fired for receiving a work related injury and considering to exercise his right to file a workers' compensation claim (complaint ¶ 18); (4) misled regarding the content of termination paperwork, and that paperwork he signed during the termination process was subsequently amended, without his knowledge or consent, to indicate that he was voluntarily leaving rather than being laid off due to a lack of work. (Complaint ¶ 22.) Plaintiff further alleges that in a phone conversation with the plaintiff's wife on February 22, 1997, Corallo informed her that "plaintiff's work injury was going to increase his workers' compensation rates[,]" and that due to the plaintiff's injury, "he was not going to CT Page 10504 receive a rebate" from his workers' compensation insurer. (Complaint ¶ 18.)
Viewing the facts most favorably to the plaintiff, the claim is accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge sufficient to sustain a cause of action for negligent infliction of emotional distress, and thus, defendants' motion to strike the second count of the plaintiff's complaint is denied.
In count three of the complaint, the plaintiff seeks recovery against the defendant Corallo, individually, for damages resulting from intentional infliction of emotional distress. Corallo has moved to strike count three arguing that plaintiff has failed to allege facts sufficient to pierce the corporate veil or to establish that his actions were extreme and outrageous.
The plaintiff is not attempting to pierce to the corporate veil or to hold Corallo personally liable for the acts of the corporation. The complaint alleges that Corallo personally dealt with the plaintiff in a tortious manner. (Complaint ¶¶ 10-11,17-22.) Moreover, Corallo was sued in his capacity as an agent, servant and/or employee of the defendant company and not in his capacity as the President of Newberry Industries, Inc. (Complaint ¶ 2.)
In order to recover for intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337
(1986). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) DeLaurentis v. New Haven,220 Conn. 225, 267, 597 A.2d 807 (1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for the court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v. Eastman KodakCT Page 10505Co., 42 Conn. Sup. 17, 18, 597 A.2d 846 (1991).
Redding v. Liberty Bank, Superior Court, judicial district of New London at New London, Docket No. 531691 (May 22, 1995, Hendel, J.), is a case with facts that are substantially similar to those in the present case. In Redding, the plaintiff alleged in her complaint that, "after filing a workers' compensation claim complaining of pain in her right wrist, she . . . informed the Bank that her scheduled job assignment had caused her to experience pain. Despite having knowledge of her pain and medical condition, however, the Bank refused to modify her job assignment." Id. Additionally, the plaintiff alleged that, "despite her requests on various occasions for assignments that would not aggravate her medical condition and cause her pain, the Bank failed to accommodate her condition by refusing to honor such requests for modified assignments." Id. The plaintiff also alleged that, "by way of the foregoing extreme and outrageous conduct, the Bank [either] intended to inflict emotional distress on the plaintiff or knew or should have known that emotional distress was a likely result of its conduct." Id. Finally, the plaintiff alleged that she suffered severe emotional distress which was proximately caused by the Bank's conduct. Id.
Citing leading cases on the issue of extreme and outrageous conduct,[4] Judge Hendel concluded: "In light of the foregoing, the court cannot find, as a matter of law, that the plaintiff has failed to set forth a legally sufficient claim of intentional infliction of emotional distress. Although the plaintiff's allegations may not arise to the level of extreme and outrageous conduct required, this is a question of fact for the trier. . . . Reasonable minds could differ regarding the issue of whether the allegations set forth above, if true, rise to the level of `extreme and outrageous' conduct contemplated by either the Restatement or Connecticut caselaw." Redding v. Liberty Bank,
supra, Superior Court, Docket No. 531691.
Similarly, in Hansen v. Berger, Lehman Associates, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 395163 (Oct. 14, 1994, Freed, J. ) (12 Conn. L. Rptr. 555, 556 ), Judge Freed held that whether the conduct of a defendant rose to the level of extreme and outrageous behavior, where the defendant had used profanity and made defamatory statements about the plaintiff, was a factual question for a jury. CT Page 10506
The plaintiff here has not alleged filing a workers' compensation claim as did the plaintiff in Redding.
Nevertheless, like the plaintiff in Redding, the plaintiff here alleges (1) that he complained of pain to his employer after suffering a work related injury (complaint ¶ 7); (2) that he specifically informed his employer that his scheduled job assignment caused him to experience pain (complaint ¶ 11); (3) that despite having knowledge of his pain and medical condition, his employer failed to accommodate his condition by refusing to honor his requests for assignments that would not aggravate his medical condition (complaint ¶¶ 11, 14-17); (4) that by way of the foregoing extreme and outrageous conduct, the defendant Corallo either intended to inflict emotional distress on him or knew or should have known that emotional distress was a likely result of his conduct (complaint, count III ¶¶ 24-26); and (5) that he suffered and continues to suffer severe emotional distress proximately caused by Corallo's conduct. (Complaint, count III ¶¶ 26, 28, and 29.) In addition to the similarities with the plaintiff in Redding, the plaintiff here also alleges that he was coerced to refrain from filing a workers' compensation claim (complaint ¶ 7); fired for receiving a work related injury and considering to exercise his right to file a workers' compensation claim (complaint ¶ 24); misled regarding the content of termination paperwork (complaint ¶ 22); and that paperwork he signed during the termination process was subsequently amended, without his knowledge or consent, to indicate that he was voluntarily leaving rather than being laid off due to a lack of work. (Complaint ¶¶ 19, 20, and 22.)
In the opinion of the court in the present case, reasonable minds could differ as to whether the allegations set forth rise to the level of extreme and outrageous conduct required to sustain a cause of action for intentional infliction of emotional distress. Therefore the defendants' motion to strike the third count of the plaintiff's complaint is denied.
In count four of the complaint, the plaintiff who pleaded that the defendant employer had a "progressive discipline" procedure in place, seeks recovery for damages resulting from breach of an express or implied contract. Defendants move to strike count four arguing that insufficient facts have been pleaded to establish a mutual intent to create an express or implied contract.
In several Connecticut Superior Court decisions, it has been CT Page 10507 held that a "progressive discipline" procedure, a procedure based on a manual or company policy, absent appropriate disclaimers, can form the basis of an implied contract not to fire without following set procedures. See, e.g., Paris v. NortheastSavings, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 398144 (June 1, 1994, Corradino, J.) (11 Conn. L Rptr 575); Munson v. United Technologies,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 314476 (September 6, 1989, Hammer, J.) (4 C.S.C.R. 748).
In the present case, the plaintiff's complaint alleges that Newberry Industries "pursued a progressive discipline practice . . . [which gave employees an opportunity to correct deficiencies and] resulted in warning, suspension and ultimately discharge . . . ." (Complaint, count IV ¶¶ 26-27.) The plaintiff further alleges that the defendant employer breached the policies and procedures set out therein. (Complaint, count IV ¶ 26.) "An employer's policy of progressive discipline, once established, changes his otherwise unfettered right to discharge an employee at any time and without cause, and creates an expectation on the part of the employee that they will be followed." Munson v.United Technologies Corporation, supra, 4 C.S.C.R. 749.
In the court's opinion the fourth count of the plaintiff's complaint alleges sufficient facts to sustain a cause of action for breach of an express or implied contract. The defendants' motion to strike the fourth count of the plaintiff's complaint therefore is denied.
Robert J. Hale Judge Trial Referee